UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Ronald Lee II, and Proven
Industries, Inc.,

                                    CASE NO:  8:24-cv-01667-SDM-UAM

      Plaintiffs,

vs.


Pacific Lock Company a/k/a Paclock
and Gregory B. Waugh,

      Defendants.

_____/

## PLAINTIFFS' UNREDACTED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT WAUGH'S MOTION TO DISMISS COMPLAINT (Doc. 16)

Plaintiffs Ronald Lee, II ("Mr. Lee"), and Proven Industries, Inc. ("Proven"), (collectively, "Plaintiffs"), by and through their undersigned counsel, and pursuant to Local Rule 3.01(b), M.D. Fla. Local Rules, consistent with this Court's November 21, 2024 Order Denying Motion to Seal (Doc. 32) hereby files their Unredacted Response in opposition to the Motion to Dismiss filed by Defendant Waugh ("Waugh") (Doc. 16).

## MEMORANDUM OF LAW

### Background

This is a breach of Non-Disclosure Agreement ("NDA") case coupled with claims of trade secret misappropriation under both the Federal Defend Trade

Secrets Act, 18 U.S.C. 1836 and the Florida Uniform Trade Secrets Act, codified at Chapter 688.001 et seq., Florida Statutes, along with a pendant common law tortious interference claim. According to the Complaint, Defendant Waugh is the CEO and a Director of Defendant Paclock. Doc. 1 at ¶5. Waugh signed the NDA on behalf of Defendant. *Id.* at ¶14. All of the salient corporate misconduct was undertaken "under the direction and control of Waugh." *Id.* at ¶¶8 & 9. Waugh personally threatened Plaintiffs that Defendants could manufacture a replica of Plaintiffs' product at a substantially lower price to damage Plaintiffs with its customer base and bottom line. *Id.* at ¶31.

## Waugh's Motion to Dismiss

Waugh's Motion to Dismiss for Lack of Personal Jurisdiction asserts: "The Complaint fails to establish that this Court possesses personal jurisdiction over Mr. Waugh and, as a ***factual*** and legal matter, it does not." Doc. 16 at pp. 3-4. Waugh supports his Motion with a declaration averring that he has no contacts or ties to the State of Florida. *Id., Ex.* A. Waugh also claims that the corporate shield doctrine immunizes him from personal jurisdiction in Florida for his acts on behalf of Defendant Paclock even though Plaintiffs' claims against him are for intentional torts directed at a Florida resident. *Id.* at pp. 8-9.

Waugh also challenges the pleading sufficiency of the Complaint under Fed. R. Civ. P 12(b)(6) in a fashion that parallels Defendant Paclock's Motion to Dismiss. (Doc. 15; *see* Plaintiffs' Opposition to same, Doc. 24).

## <u>Jurisdictional Discovery</u>

To counter Waugh's declaration denying contacts with Florida, Plaintiffs conducted limited jurisdictional discovery involving the production of documents and culminating in a deposition of Waugh conducted on October 18, 2024. This discovery revealed that Waugh is the president and CEO of Defendant Paclock and has held these positions since 2008. Waugh depo at p. 8. He also performs the CFO functions of the company. *Id*. at p. 20. Waugh refers to Defendant Paclock as a family business that is owned by three related families. *Id*. at pp. 12-13.

As president and CEO, Waugh reports to Paclock's Board of Directors. *Id.* at p. 13. Yet, he admits that he is also the Chairman of the Paclock Board of Directors and has been so at all times germane to this dispute. *Id.* at p. 14. While Waugh doesn't like to admit that he reports to himself, *id.* at p. 16, he concedes that he doesn't report to somebody other than the chairman of the board. *Id*. at p. 15.

The Paclock Board of Directors meets once a year, id. at pp. 16-17, and is comprised of three (3) people, Waugh, his wife and his mother-in-law. *Id*. at p. 18. Waugh and his wife jointly own more than 50% of the stock of Paclock. *Id*. at p. 76.

Waugh signed the NDA with Plaintiff Lee on behalf of Paclock in August 2014. Id. at p. 26-27 & Ex. 1. Paclock employees "know that [Waugh] handle[s] the high-level communications in any situations like these. And if there's any information that's going to be exchanged, that would fall into some sort of NDA situation, that most likely it always comes to [Waugh] directly." Id. at 86. So, as for NDAs at Paclock, Waugh is "the guy" and does not delegate responsibility. Id. No other Paclock employee is authorized to sign an NDA on behalf of the company. Id. at p. 32.

During the time when Paclock and Plaintiff Prove were engaged in a business relationship – from August 2014 until September 2019 – Waugh typically communicated with Lee via e-mail, with a small amount of phone calls. Id. at 36. Initially, Waugh's communications with Lee "would've been trying to decide what the business relationship might look like between the two companies" and then "transitioned more into a situation – when [Waugh would be involved where] there would be higher level issues between the companies…" Id.

On April 19, 2019, as the relationship between the parties was unraveling, Waugh wrote Lee:

> And just so we are all clear, if we cannot get ourselves realigned with a new agreement than it will be Paclock's intent to produce padlocks for your products as we have been doing for years, selling them everywhere we can, including Amazon, touting how these locks are truly the original equipment manufacturer's locks for your products

and do so at a price substantially lower than what we sell them for today.

Whether I sell just one or thousands, it won't really matter to Paclock. Rather, the damage that will be dealt will be to Proven directly with its customer base and its bottom line. You will get lots of calls as to why the exact product being sold by Proven is double the cost. I think you'll have a tough time justifying your past sales and any future sales.

*Id*. at pp. 41-42; Ex. 3. When Waugh wrote this to Lee, he intended that there would be damage to Proven. *Id*. at p. 44. Waugh understands that Proven is a Florida based company. *Id*.

Shortly after the relationship between Paclock and Proven ended, on September 1, 2020, Waugh wrote to his upper-level staff: "here's what I'm thinking. We need two versions. Both are [Plaintiffs'] original gangsters, the 2178 and the 2516." *Id*. at 48 & Ex. 4. Waugh was sharing his thinking that Paclock should develop these two products manufactured by Proven to be competitive to Proven's products. *Id*.

The next day, Waugh wrote Lee: "I'll clue you into something here. Remember how you told me on multiple occasions how you jack up your prices because your customers are dumb? That only works if there is no competition, but the moment that there's competition, customers have an alternative. Paclock getting into your business will have a real impact on your business. Your business model will need to have significant changes." *Id*. at p. 50 & Ex. 5. Waugh intended

that Paclock's development of products like Proven's 2516 and 2178 trailer coupler locks would have a significant negative impact on Plaintiffs' business.

Finally, when Paclock actually brought its UCS 77-2516 product to market in late 2023-early 2024, Paclock sold its product through its internet distributor 1st-in-Padlocks. When Proven objected, Waugh wrote the distributor:

> My thoughts are, though, to reward you guys for being a great customer for us, and weathering this nonsense with Ron Lee the way you have, let's talk in a few week about doing some sort of blowout type of sale to introduce the best trailer hitch lock on the market, kind of thing.
>
> Let's hit Ron Lee where it hurts: his pocketbook.

*Id.* at p. 56 & Ex. 7. Waugh extended this proposal to the distributor to "hurt" Proven. Id. at p. 58.

Curiously, given Waugh's sworn declaration disavowing contacts with Florida, Doc. 15, Ex. A, jurisdictional discovery exposed some glaring omissions. First, Waugh attends the annual ALOA Security Professionals Convention. In 2023, the ALOA Convention was in Orlando, Florida. *Id*. at pp. 63-65 & 87; See https://www.aloa.org/documents/ALOA-2023-Booth-Application-w-cc-form.pdf . The ALOA Convention was also conducted in Orlando (with Waugh in attendance) in 2021, see https://www.aloa.org/documents/ALOA-2021-Exhibitor-Prospectus_final.pdf and 2016. See https://www.showsbee.com/fairs/25903-ALOA-Convention-2016.html .

Waugh also vacations in Florida. *Id*. at pp. 66-67. He visits customers in the State of Florida. *Id*. at pp. 67-68. Even in the past six months, Waugh attended an F-1 auto race in Miami, Florida. *Id*. at p. 68. Yet, he neglected to disclose any of these Florida contacts in his sworn declaration.

### Legal Standards

"A federal court sitting in diversity undertakes a twostep inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.2009). When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990).

The legal standards for challenging the sufficiency of a pleading under Fed. R. Civ. P. 12(b) are well known to the Court. When analyzing a motion to dismiss,

the court is limited to a consideration of the four corners of the plaintiff's complaint and in doing so, the court must accept the plaintiff's allegations as true, and resolve all inferences in the plaintiff's favor. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). "A complaint may not be dismissed [for failure to state a cause of action] 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997); *Pataula Elec. Membership Corp. v. Whitworth,* 951 F.2d 1238, 1240 (11th Cir. 1992*); see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations and is sufficient even if it appears that a recovery is very remote and unlikely." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Under Federal Rule of Civil Procedure 8(a)(2), to state a cause of action, a complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of the claim and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## LEGAL ARGUMENT

### I.    Personal Jurisdiction over Waugh is Present Because he is alleged to have committed Intentional Torts Injuring a Florida Resident

The Florida Long-Arm Statute provides that a nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from ... [c]omitting a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2). "[U]nder Florida law, a nonresident defendant commits "a tortious act within [Florida]" when he commits an act outside the state that causes injury within Florida. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir.2008); *accord Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013).

The Complaint alleges that Waugh violated the DTSA and FUTSA by misappropriating Plaintiffs' trade secrets. These counts constitute torts subsumed under Fla. Stat. § 48.193(1)(a)(2). *Spigot, Inc. v. Hoggatt*, 2020 WL 1955360 at *12 & 13 (M.D. Fla. 4/23/2020). Under the long-arm statute, a defendant's physical presence is not required to "commit a tortious act" and that jurisdiction can be established "through the nonresident defendant's telephonic, electronic, or written communications into Florida" if "the cause of action ... arise[s] from the communications." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). "[T]he *Wendt* rule is applied when the tort 'involves some sort of communication directed into Florida for purpose of fraud, slander, or other intentional tort." *Harrison v. NC3 Systems, Inc.*, --- So.3d ---- 2024 WL 4481229 *3 (Fla. 6th DCA 2024).

The allegations in the Complaint and the evidence adduced during the Waugh deposition make clear that Waugh intended his actions to cause injury to Plaintiffs – Florida residents. *See Water Tree Ventures LLC v. Giles,* 2019 WL 13161889 at *4 (N.D. Fla. 2019) (injury suffered by Florida resident by non-resident's out-of-state conduct satisfies long-arm statute).Waugh threatened to sell Paclock's locks at below market prices stating "Whether I sell just one or thousands, it won't really matter to Paclock. Rather, the damage that will be dealt will be to Proven directly with its customer base and its bottom line." Waugh then followed through on his threats by instructing Paclock to manufacture products comparable to and competitive with Plaintiffs' trailer coupler locks. Waugh emphasized to Lee Waugh's approach "will have a real impact on your business. Your business model will need to have significant changes." Lest there be any doubts about Waugh's personal knowledge and intent to injure the Florida Plaintiffs, he reiterated his motivation to "hurt" Plaintiffs, in their pocketbook.

Notwithstanding Waugh direct personal involvement in these threats and conduct, Waugh seeks to avoid being haled into Florida court under the corporate shield doctrine. "The 'corporate shield' doctrine, also referred to as the "fiduciary shield" doctrine, provides that acts performed by a person exclusively in his corporate capacity not in Florida but in a foreign state may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state."

*Kitroser v. Hurt*, 85 So.3d 1084, 1088 (Fla. 2012). However, "a corporate officer who commits fraud or other intentional misconduct outside of Florida may be subject to personal jurisdiction" under the long-arm statute. *Id*. at n. 3. Florida courts have interpreted this exception as requiring the defendant to have personally and intentionally engaged in tortious conduct that was "calculated to inflict a direct injury upon a resident of Florida." *Harrison v. NC3 Systems, Inc.*, 2024 WL 4481229 at * 5 (*quoting Rensin*, 18 So. 3d at 576 (Fla. 1st DCA 2009));

This exception to invocation of the corporate shield doctrine applies in this case because trade secret misappropriation is an intentional tort. *See Compulife Software, Inc. v. Newman*, 111 F.4th 1147, 1163 (11th Cir. 2024) ("in Florida, trade secret misappropriation is an intentional tort"); *Bovie Med. Corp. v. Livneh*, 2010 WL 5297172, *6 (M.D. Fla. Dec. 20, 2010) ("Misappropriation of trade secrets is an intentional tort in the state of Florida."). The submitted evidence establishes that Waugh, personally and consciously participated in the alleged commission of the intentional torts of trade secret misappropriation.

## II.    Counts II, III and IV are Properly Pleaded

Regrettably, Waugh's Rule 12(b)(6) motion to dismiss seeks to argue the facts, relies on material and a declaration well beyond the four corners of the complaint and seeks to impose unfounded and onerous pleading demands. As such, the motion is due to be denied.

While Waugh's motion addresses its challenges to Plaintiffs' claims out of order, this response will follow the order of claims in the Complaint.

**A. Count II – Violation of Federal Defense of Trade Secrets Act**

Under the Federal Defense of Trade Secrets Act ('DTSA"), "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for us in, interstate or foreign commerce. 18 U.S.C. § 1836(b). The term "trade secret" means:

> **[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information including patterns, plans**, compilations, program devices, **formulas**, **designs**, **protypes**, **methods**, **techniques**, **processes**, **procedures**, programs, codes, **whether tangible or** **intangible**, **and whether or how stored, compiled, or memorialized** **physically, electronical**ly, graphically, photographically, or in writing **if: (a)** **the owner thereof has taken reasonable measures to keep such** **information secret, and (b) the information derives independent** **economic value, actual or potential, from not being generally known to,** **and not being readily ascertainable through proper means by, another** **person who can obtain economic value from the disclosure of use of the** **information.** 18 U.S.C. § 1839(3).

18 U.S.C. § 1839(5)(B) defines misappropriation as:

> **[D]isclosure or use of a trade secret of another without express or** **implied consent by a person who** . . . **(ii) at the time of disclosure or use,** **knew or had reason to know that the knowledge of the trade secret was**; . . . **(II) acquired under circumstances giving rise to a duty to maintain the** **secrecy of the trade secret or limit the use of the trade secret**. . .

To maintain a cause of action under the DTSA a plaintiff must establish (1) Ownership of the trade secret, (2) Misappropriation of the trade secret and (3) Damage caused by the Defendants actions. *Oakwood Laboratories LLC v. Thanoo,* 999

F.3d 892, 905 (3d Cir. 2001).

Staying within the four corners of the complaint, Plaintiffs properly alleged at the time of Defendants' use of Plaintiffs trade secrets, (1) Plaintiffs owned the trade secrets relating to the market data related to the untapped market niche of the 2516 Lock and the price margins and product volume information, *See* Complaint ¶¶29 & 51 (2) Defendants misappropriated the trade secret under circumstances giving rise to a duty to maintain its secrecy, *See* Complaint ¶54-55, 57, and (3) Damage has resulted from Defendants' actions. *See* Complaint ¶56.

Moreover, Plaintiffs plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For all reasonable inferences must be drawn in Plaintiffs favor. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

A plaintiff is not required to identify the alleged trade secrets with particularity, they only must allege sufficient facts to plausibly show a trade secret was involved and give the defendant notice of the materials it claims constituted the trade secret. *Developmental Techs., LLC v. Mitsu Chemicals, Inc.,* 2019 WL 1598808, at 3 (M.D. Fla. Apr. 15, 2019). Previous courts have denied motions to dismiss where Plaintiff described the misappropriated trade secret as "information, formulas, patterns, compilations, programs, devices, methods,

13

techniques, seminar lists, customer lists, promotional material and processes." *See Id.*; (quoting *Godwin Pumps of Am., Inc. v. Ramer,* 2012 WL 1110068 at 7 (M.D. Fla. Apr. 3, 2012)).

Defendants allege Plaintiffs have only provided conclusory allegations set forth in its Complaint regarding the ownership and type of trade secrets possessed by Plaintiffs. In its argument, Defendants cite only paragraphs 52, 54, and 56 of Plaintiffs Complaint. However, Defendants ignore paragraphs 18-24 & 29 of the Complaint, incorporated in each count, factually detailing the trade secrets and the misappropriation thereof. Therefore, Plaintiffs have satisfied the requirements to allege a proper cause of action.

### B. Count III – Violation of the Florida Uniform Trade Secrets Act

Similar to the DTSA, the Florida Uniform Trade Secrets Act ("FUTSA") provides that "a complainant is entitled to recover damages for misappropriation" of a trade secret. §688.004(1), Fla. Stat. Misappropriation is defined by the FUTSA as:

> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who . . . (2) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. § 688.002(2), Fla. Stat. (2021)

A trade secret under the FUTSA is defined as:

> [I]nformation, including a formula, pattern, program, device, method, technique, or process that: (a) derives independent economic value,

actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. § 688.002(4), Fla. Stat. (2021)

Much like the DTSA, the FUTSA requires a plaintiff to allege (1) the existence of a trade secret, and (2) misappropriation of the trade secret. *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018) (internal quotations and citations omitted); *accord Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 2015 WL 6736792 *4 (M.D. Fla. Nov. 4, 2015)

As previously stated, Plaintiffs have sufficiently alleged a short and plain statement which entitles them to relief. No further factual inquiry is required as the factual allegations have sufficiently alleged facts to plausibly show a trade secret was involved and give the defendant notice of the materials it claims constituted the trade secret. *Mitsu Chemicals, Inc.*, 2019 WL 1598808, at 3 (M.D. Fla. Apr. 15, 2019). Therefore, Plaintiffs assert they have satisfied its requirements to allege a proper cause of action.

### C. Count IV – Tortious Interference with Contract.

"A bar by the applicable limitation is an affirmative defense, and no rule requires a plaintiff to negate an affirmative defense in the complaint." *Drilling Consultants, Inc. v. First Montauk Securities Corp.*, 2011 WL 13302554 *3 (M.D. Fla. Dec. 11, 2011); *accord La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th

Cir. 2004). For a claim to be dismissed as barred by the statute of limitations, there must be clear and irrefutable evidence regarding its violation as there are no heightened pleading requirements. *Ray v. Adamas and Associates, Inc.*, 599 F. Supp.3d 1250, 1257 (S.D. Fla. 2022); *see also Twombly*, 550 U.S. 444 (2007).

Paclock argues that Count IV is barred by the 4-year statute of limitations with the false statement that "The Complaint alleges that 'Defendants''[sic] alleged tortious interference occurred in April 2020, but the Complaint was not filed until July 15, 2024, well over four (4) years later." But, this is not what is alleged.

Plaintiffs allege that the tortious interference occurred "about a year later" after Defendants' April 19, 2019 threat to violate MNDA and misappropriate Plaintiffs' trade secrets. Complaint, ¶33. Plaintiffs do not allege that the tortious interference occurred in April 2020.

For Paclock's argument to have any validity, the phrase "about a year later" would have to mean "less than one year and 87 days later." Of course, there is no construction of the phrase "about a year" that compels such a fixed and unyielding meaning. Rather, the term "about a year" is an undefined measure that does not foreclose an occurrence one year and 3 months later or even one year and 11 months later. Thus, there exists a very significant factual dispute as to when the tortious interference occurred. Spoiler alert: the facts will establish that Defendants' interference with the common patent agent occurred well within the

4 year statute of limitations. [1]

**Claim for Injunctive Relief**

Plaintiffs' request for injunctive relief as a remedy is wholly appropriate at the pleadings stage. Both the DTSA and FUTSA explicitly authorize injunctive relief. Further, in the case of Lee's breach of contract claim, injunctive relief is also available to prevent future irreparable injury from the breach that cannot be adequately compensated by monetary damages.

It is wholly premature to prejudge the propriety of such relief at this early stage of the proceedings. Paclock mis-cites *CHHJ Franchising LLC v. Spaulding*, 2024 WL 229406 *8 (M.D. Fla. Jan. 22, 2024) for the proposition that requests for preliminary and permanent injunctive relief are properly dismissed on a Rule 12(b)(6) motion. The *CHHJ Franchising LLC* Court dismissed stand-alone counts for preliminary and permanent injunctive relief – claims not present in the instant Complaint – since injunctive relief is a remedy not a separate claim. The Plaintiff was permitted to seek the remedy of injunctive relief as part of its other claims.

## <u>CONCLUSION</u>

Waugh is alleged to have personally participated in the commission of intentional tortious acts. The evidence adduced at Waugh's jurisdictional

---

[1] For reasons that defy explanation, Paclock has appended the declaration of the common patent agent to its Motion to Dismiss. There is NO justifiable basis to include such an untested, factual document as part of a Rule 12(b)(6) Motion.

deposition demonstrates his knowing and active involvement in the conduct alleged to constitute trade secret misappropriation. Further, Waugh's own words are a confession that he intended his conduct to injure and "hurt" the Florida Plaintiffs. Waugh cannot invoke the corporate shield doctrine to avoid answering to Plaintiffs' Complaint in Florida court. Waugh's further attempt to argue facts, rely on materials beyond the four corners of the Complaint and impose pleading requirements well beyond those envisioned in Fed. R. Civ. P. 8(a)(2) should not be permitted. The Motion to Dismiss should be denied in all respects.

/s/ Frank R. Jakes
Frank R. Jakes
FB # 372226
JOHNSON POPE BOKOR RUPPEL
& BURNS, LLP
400 N. Ashley Drive, Suite 3100
Tampa, Florida 33602
(813) 225-2500 / (813) 223-7118 (fax)
Attorneys for Plaintiff
frankj@jpfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 2, 2024, I electronically filed the foregoing with the Clerk of the Court by using the E-Filing Portal, which will send a notice of the electronic filing to the following: Richard E. Fee, Esquire, and Kathleen M. Wade, Esquire, Fee & Jeffries, P.A.,1227 N. Franklin Street, Tampa, FL 33602; rfee@feejeffries.com; kwade@feejeffries.com; bszabo@feejeffries.com;

/s/ Frank R. Jakes
FRANK R. JAKES