UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONALD LEE, II, et al.,

    Plaintiffs,

v.                                                          CASE NO. 8:24-cv-1667-SDM-LSG

PACIFIC LOCK COMPANY, et al.,

    Defendants.
_____/

## **ORDER**

      Alleging the violation of a non-disclosure agreement, misappropriation of trade secrets, and tortious interference with a business relation, Proven Industries, Inc., and Ronald Lee sue (Doc. 1) Pacific Lock Company and Gregory Waugh. The plaintiffs assert a claim under Florida law for a breach of contract (Count I), a claim under the Federal Defense of Trade Secrets Act (Count II), a claim under the Florida Defense of Trade Secrets Act (Count III), and a claim under Florida law for tortious interference (Count IV). Waugh moves (Doc. 16) to dismiss each Count against Waugh (Counts II, III, and IV) for lack of personal jurisdiction and failure to state a claim. Waugh's sworn declaration (Doc. 16-1) accompanies the motion. Also, Pacific Lock moves (Doc. 15) to dismiss this action for failure to state a claim. The plaintiffs respond in opposition (Docs. 24, 33) to each motion.

# BACKGROUND[1]

Lee is the founder and President of Proven, a Florida-based lock manufacturer. Proven specializes in selling and producing "coupler locks" for vehicular trailer hitches. Waugh is the CEO of Pacific Lock, a California-based corporation that produces a "hidden shackle padlock" — a disc-shaped padlock commonly called a "puck lock." Attempting to invent a new lock type for an "untapped" market in 2014, Lee desired to incorporate Pacific Lock's "hidden shackle padlock" into Proven's design of the 2516 "trailer coupler lock" (Doc. 1-5). No person outside of Proven knew about the 2516's design, and Proven worked to keep the 2516 lock's design a secret.

Lee contacted Pacific Lock and requested that Pacific Lock sign a non-disclosure agreement (Doc. 1-4) to allow Proven to share with Pacific Lock the design of the 2516 lock. Waugh and Lee signed the agreement, effective August 25, 2014. The non-disclosure agreement covers confidential and proprietary information about the design of the 2516 lock. The agreement bars Pacific Lock from communicating confidential information to a third party and prohibits Pacific Lock from producing a lock based on the 2516's design.

Lee consulted with Pacific Lock to "determine, among other things, if [Pacific Lock's] hidden shackle lock would fit the 2516 Lock with a full faceplate and an

---

[1] This order assumes that each allegation in the complaint is true and "view[s] the facts in the light most favorable" to the plaintiffs. *Abram v. Fulton Cnty. Gov't*, 482 F. App'x 421, 423 (11th Cir. 2012).

inner slide comprised of 1/4 [inch] thick steel plate." (Doc. 1 at 6) Lee communicated to Pacific Lock confidential "market data and projections" for the 2516 lock. From late 2014 to 2019, Proven purchased from Pacific Lock the "hidden shackle lock," which Proven incorporated into the 2516 lock.

In 2019, the relation between Proven and Pacific Lock deteriorated. To pressure Proven to sign an "omnibus purchasing agreement" for Pacific Lock's products, Waugh withheld "key codes" for Pacific Lock's "hidden shackle locks" from Proven customers who purchased 2516 locks. On April 19, 2019, Waugh threatened Proven in an e-mail stating,

> just so we are all clear, if we cannot get ourselves realigned with a new agreement then it will be [Pacific Lock's] intent to produce padlocks for your products, as we have been doing for years, selling them everywhere we can (including Amazon) touting how these locks are truly the 'original equipment manufacturer's locks' for your products and do so at a price substantially lower than what you sell them for today. Whether I sell just one or thousands, it won't really matter to [Pacific Lock] . . . Rather the damage that will be dealt will be to Proven directly with its customer base and its bottom line. You will get lots of calls as to why the exact product being sold by Proven is double the cost. I think you'll have a tough time justifying your past sales and any future sales.

(Doc. 1 at 9) Proven elected not to sign a purchase agreement and ceased purchasing Pacific Lock's products.

Proven and Pacific Lock shared the same patent agent, and "about a year" after Waugh's threatening e-mail, the defendants contacted the patent agent and demanded that the patent agent "cease representing Proven." Because of Pacific

- 3 -

Lock's action, the patent agent stopped representing Proven, which delayed "the prosecution of Proven's patent filings."

On September 19, 2023, Pacific Lock began producing and selling a new trailer coupler lock. Pacific Lock's new lock shares several design features (Doc. 1-7) with the 2516 lock, and like the 2516 lock, the new lock has a "full faceplate and an inner slide comprised of 1/4 [inch] steel plate." Pacific Lock sold the new lock through a distributor, 1st-In-Padlocks.com (Doc. 1-6).

## DISCUSSION

### I. PERSONAL JURISDICTION OVER WAUGH

To establish personal jurisdiction over Waugh in Florida, the complaint must show (1) that Florida's long-arm statute covers Waugh's actions and (2) that personal jurisdiction in Florida over Waugh does not violate due process under the Fourteenth Amendment. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). "In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in [the] plaintiff's complaint as true, to the extent that they are not contradicted by [the] defendant's affidavits." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999). If a defendant "challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Louis Vuitton*, 736 F.3d at 1350 (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

### A. Florida's long-arm statute

Section 48.193(1)(a)(2), Florida Statutes, states that "[a] person, whether or not a citizen or resident of this state, who personally or through an agent . . . [c]ommit[s] a tortious act within this state" "thereby submits himself . . . to the jurisdiction" of Florida. A defendant's physical presence in Florida is not required. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Rather, personal jurisdiction under Section 48.193(1)(a)(2) "over a non-resident defendant who commits a tort outside of the state that causes injury inside the state" is proper. *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1329 (S.D. Fla. 2010). "'[C]ommitting a tortious act' in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida." *Wendt*, 822 So. 2d at 1260.

Misappropriation of trade secrets and tortious interference with a business relation are intentional torts. *Compulife Software, Inc. v. Newman*, 111 F.4th 1147, 1163 (11th Cir. 2024); *St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784 So. 2d 500, 505 (Fla. 5th DCA 2001). Florida's "corporate shield doctrine" fails to negate personal jurisdiction for a corporate officer who commits an intentional tort in Florida. *Louis Vuitton*, 736 F.3d at 1355. "A corporate officer is potentially individually liable for his tortious acts even though such acts were committed in the scope of his employment by the corporation." *Orlovsky v. Solid Surf, Inc.*, 405 So. 2d 1363, 1364 (Fla. 4th DCA 1981).

The Eleventh Circuit holds that although a non-resident never physically enters Florida Section 48.193(1)(a)(2) is satisfied if the non-resident commits an intentional tort that causes injury in Florida. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (finding long-arm jurisdiction under Section 48.193(1)(a)(2) for a defendant whose posts on a website from Tennessee infringed on the plaintiff's trademarks and damaged the plaintiff in Florida); *VAS Aero Servs., LLC v. Arroyo*, 868 F. Supp. 2d 1374, 1379 (S.D. Fla. 2012) ("The Eleventh Circuit's broad construction of section 1(b) permits a court to exercise personal jurisdiction over a non-resident defendant if the defendant's purported commission of a tort outside Florida causes injury inside Florida."). The complaint alleges that Waugh appropriated trade secrets and tortiously interfered with a business relation. According to the complaint, Waugh directed his tortious conduct at a Florida business, and each of the plaintiffs' injuries occurred in Florida. If the complaint states a claim for misappropriation of a trade secret or tortious interference, personal jurisdiction over Waugh is proper under Florida's long-arm statute.

Under federal law, to prevail on a misappropriation of trade secrets claim, a plaintiff must establish (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret, and (3) that the trade secret implicates interstate or foreign commerce. *Hurry Fam. Revocable Tr. v. Frankel*, 2019 WL 6311115, at *13 (M.D. Fla. Nov. 25, 2019) (Covington, J.). For a federal claim, a "trade secret" is information that the owner has "taken reasonable measures to keep . . . secret" and that "derives independent economic value, actual or potential, from

- 6 -

not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of such information." 18 U.S.C. § 1839(3)(A), (B). "Misappropriation" occurs if "a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent." *Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*, 2018 WL 3391379, at *4 (M.D. Fla. June 12, 2018), *report and recommendation adopted as modified on other grounds*, 2018 WL 4771060 (M.D. Fla. Oct. 3, 2018) (Merryday, J.).

Under Florida law, to prevail on a misappropriation of a trade secret claim, a plaintiff "must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (quotation omitted). Under Section 688.002(4), Florida Statutes a "trade secret" is:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

"[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectable secret." *Patient Depot, LLC v. Acadia Enterprises, Inc.*, 360 So. 3d 399, 407

(Fla. 4th DCA 2023). "Misappropriation" is the "acquisition of a secret 'by someone who knows or has reason to know that the secret was improperly obtained or who used improper means to obtain it.'" *Yellowfin*, 898 F.3d at 1297 (quoting *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017)).

The plaintiffs allege that the specifications for and design of Proven's 2516 trailer lock are "confidential information." (Doc. 1 at 7, 15) The complaint alleges that the "[t]he new trailer coupler lock [the 2516] was a premium level coupler lock, assembled from fabricated components, for a common trailer coupler. The fabricated components were made from steel pipe, steel plate, and a hidden shackle padlock." (Doc. 1 at 5–6). The plaintiffs also communicated confidential information about the plaintiffs' "market data and projections for [the] nascent and untapped market niche" for Proven's 2516 trailer lock and data about the 2516 lock "unit volume and price margins."

The plaintiffs allege that the plaintiffs "did not disclose the 2516 Lock to any person or entity outside of Proven." (Doc. 1 at 6) Because the plaintiffs were determined to protect the confidential information about the 2516 lock's specifications and design, the plaintiffs required the defendants to sign a non-disclosure agreement before the plaintiffs shared any 2516 lock information with the defendants. (Doc. 1 at 6–7) The complaint alleges sufficient facts establishing that the plaintiffs' actions to protect the trade secret were "reasonable under the circumstances to maintain its secrecy."

About September 2023, and in violation of the non-disclosure agreement, the defendants "began producing and selling a trailer coupler lock" that directly competes with the 2516 lock. The defendants' new lock shares characteristics with the 2516 lock, including "a full faceplate and an inner slide comprised of 1/4 [inch] steel plate." (Doc. 1 at 9–10) The defendants sold the new lock through a third-party online retailer. The complaint alleges that the defendants by breaching the non-disclosure agreement "improperly obtained" the trade secret.

The defendants argue (Docs. 15 at 13, 15; 16 at 14, 16) that each claim for misappropriation of a trade secret fails because the complaint does not clearly define the trade secret. Although a "plaintiff is required to identify with reasonable particularity the trade secrets at issue before proceeding with discovery . . . to satisfy this requirement at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016) (per curiam). "[W]hether something is a trade secret is a question typically 'resolved by a fact finder after full presentation of evidence from each side' . . . ." *Yellowfin Yachts*, 898 F.3d at 1298–99 (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288–89 (5th Cir. 1978)). The complaint describes the trade secret with "reasonable particularity" and confers sufficient notice on the defendants.

The defendants also argue (Doc. 15 at 10–11) that as a matter of law the design of the 2516 lock is not a trade secret because the 2516 lock is sold to the public,

and any purchaser can readily ascertain the important characteristics of the 2516 lock. Further, a previous action[2] disclosed to the public detailed information on the design and specifications of the 2516 lock. Although "[i]nformation that is generally known or readily accessible to third parties cannot qualify for trade secret protection," *La Potencia, LLC v. Chandler*, 733 F. Supp. 3d 1238, 1272 (S.D. Fla. 2024) (quoting *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)), determination of whether the 2516 lock is "generally known" or "readily accessible" must await a more developed factual record.

The plaintiffs' complaint sufficiently alleges that the plaintiffs owned a trade secret, that the plaintiffs took reasonable steps to protect that trade secret, that the defendants misappropriated the trade secret by manufacturing a competing lock based on confidential information, and that the misappropriation depended on inter-state commerce. The complaint states a claim for misappropriation of a trade secret under both federal and Florida law.

Under Florida law, the elements of a claim for tortious interference with a business relation are "(1) the existence of a business relation[]; (2) knowledge of the relation[] on the part of the defendant; (3) an intentional and unjustified interference with the relation[] by the defendant; and (4) damage to the plaintiff as a result of the breach of the relation[]." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015) (quotation omitted). The complaint alleges that the

---

[2] *Gushill Industries, Inc. v. Proven Industries, Inc., et al.*, amended complaint, No. 8:19-cv-02770-SDM-AEP (M.D. Fla. 2019).

plaintiffs had a business relation with a patent agent.  In 2020, the defendants contacted the plaintiffs' patent agent and "demanded that the Patent Agent cease representing Proven."  Because of the defendants' "interference, the Patent Agent ceased representing Proven," which caused damage to the plaintiffs.  The complaint states a claim for tortious interference.

The defendants argue (Docs. 15 at 5–6; 16 at 13–14) that Florida's four-year limitation bars a claim for tortious interference.  On April 19, 2019, Waugh sent an allegedly threatening email to the plaintiffs and the tortious interference occurred "about a year" after the e-mail.  This action commenced on July 15, 2024.  Unless "facts on the face of the pleadings show that the statute of limitations bars the action," the limitation "should be raised as an affirmative defense in the answer rather than in a motion to dismiss."  *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012).  The complaint fails to clearly show that the plaintiffs' tortious interference claim is time-barred.   A determination of whether the four-year limitation bars this action must await a more developed factual record.[3]

Waugh argues (Doc. 16 at 11–12) that because the complaint refers to the actions of "the defendants" collectively without differentiating between the acts of Pacific Lock and the acts of Waugh, the complaint cannot support long-arm

---

[3] Pacific Lock and Waugh submit (Docs. 15-1; 16-2) the declaration of Peter Ganjian. The declaration states that Ganjian was Proven's patent agent and that Pacific Lock never "demanded, requested, or even suggested that I cease representing Mr. Lee or Proven Industries, Inc." The complaint fails to identify the patent agent by name and Ganjian's assertions attack the merits of the plaintiffs' claim. Consideration of the truth and import of Ganjian's assertions in the declaration on a motion to dismiss is improper and premature.

- 11 -

jurisdiction. This argument fails to persuade. "A plaintiff may plead claims against multiple defendants by referring to them collectively, for example by referring to a group of defendants as 'defendants.'" *1-800-411-I.P. Holdings, LLC v. Georgia Inj. Centers, LLC*, 71 F. Supp. 3d 1325, 1330 (S.D. Fla. 2014) (citing *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir.1997)). "[C]ollective allegations are construed as pertaining to each defendant individually," and provided that the complaint sufficiently alerts Waugh to the claims against Waugh the form of the complaint is proper. *1-800-411-I.P. Holdings*, 71 F. Supp. 3d at 1330. The complaint states sufficient facts with sufficient particularity to notify Waugh of each claim against him.

In his declaration (Doc. 16-1), Waugh states that he is the CEO of Pacific Lock, that Waugh lives in California, that Waugh neither owns property nor owns a bank account in Florida, that Waugh neither resides nor is domiciled in Florida, that Waugh has no personal contracts in Florida, and that Waugh receives no income from, nor maintains a business in, Florida. No fact in the declaration either addresses or undermines the allegations that Waugh committed an intentional tort directed at Florida residents and that the tortious conduct caused harm in Florida. Because the complaint sufficiently alleges a claim for misappropriation of a trade secret and tortious interference, Florida's long-arm statute covers Waugh's alleged conduct. Under Florida law, Waugh is subject to personal jurisdiction in Florida. *See VAS Aero*, 868 F. Supp. 2d at 1380 (finding that a plaintiff's allegations of misappropriating a trade secret for conduct in Washington that caused damage in Florida subjected the non-resident defendant to Florida's long-arm jurisdiction).

### B. Constitutional due process

The exercise of personal jurisdiction over Waugh must comply with the Fourteenth Amendment's due process requirements. A defendant must have sufficient "minimum contacts" with the forum state "such that he has 'fair warning' that he may be subject to suit there." *Licciardello*, 544 F.3d at 1284. A defendant has "fair warning" if the defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Licciardello*, 544 F.3d at 1284 (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). If a plaintiff establishes a defendant's minimum contacts with the forum, personal jurisdiction must still comply with "fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 320 (1945).

If the allegations in the complaint are true, Waugh committed several intentional torts that directly damaged a Florida company, and Waugh knew that the damage would occur in Florida. The allegations of intentional conduct directed at Florida are sufficient to establish Waugh's minimum contact with Florida. Also, exercising personal jurisdiction over Waugh fails to violate "fair play and substantial justice" because subjecting Waugh to suit in Florida along with Pacific Lock, a corporation Waugh directs, is not unreasonable. Waugh fails to argue that subjecting Waugh to an action in Florida imposes an unreasonable burden on Waugh personally. Whether a defendant in this action or not, Waugh will likely have significant

involvement in this action — the exercise of personal jurisdiction over Waugh fails to violate "fair play and substantial justice."

The complaint alleges sufficient facts, and Waugh's declaration fails to rebut each of those facts, to establish that Waugh is subject to Florida's long-arm jurisdiction and that personal jurisdiction over Waugh in Florida fails to violate the Fourteenth Amendment's due process requirement. Florida's exercise of personal jurisdiction over Waugh is proper.

## II. FAILURE TO STATE A CLAIM

Each defendant moves (Docs. 15 and 16) to dismiss the complaint for failure to state a claim. As described above, Counts II, III, and IV each state a claim against the defendants. Pacific Lock argues that Count I fails to state a claim for breach of contract.

To establish a claim for breach of contract, a plaintiff must show (1) that a valid contract existed, (2) that the defendants materially breached the contract, and (3) that the plaintiffs sustained damages because of the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). The complaint alleges that Proven and Pacific Lock entered into a non-disclosure agreement and attaches (Doc. 1-4) a copy of the agreement signed by both parties. The agreement covers "confidential" and "proprietary" information about a "trade secret of a coupler lock for trailers that will use a puck style lock," and "confidential information" concerning marketing and business plans to sell the 2516 lock. (Doc. 1-4 at 2) The agreement covers the written and oral exchange of all confidential information about the 2516 lock. Paragraph

Seven of the agreement states that Pacific Lock "shall not directly or indirectly acquire any interest in, or design, create, manufacture, reengineer, sell or otherwise deal with any item or product containing, based upon or derived from the CONFIDENTIAL INFORMATION . . . ."

The plaintiffs allege that Pacific Lock obtained confidential information about the 2516 lock and breached Paragraph Seven of the agreement by producing and selling a lock based on the 2516 lock. The plaintiffs allege that the production and distribution of the new lock damaged Proven (Doc. 1 at 11). The complaint states a claim for breach of contract.

Finally, the defendants argue (Docs. 15 at 16; 16 at 17–18) that denial of the plaintiffs' request for injunctive relief is proper because the complaint fails to establish the necessary elements of a preliminary injunction. No motion for a preliminary injunction appears. The defendants may renew an objection to a preliminary injunction if a motion appears.

## CONCLUSION

Because the complaint states facts sufficient to establish personal jurisdiction over Waugh and because the complaint states a claim against each defendant, each motion to dismiss warrants denial. The motions (Docs. 15, 16) are **DENIED**.

ORDERED in Tampa, Florida, on January 24, 2025.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE