## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Ronald Lee, II, and Proven,
Industries, Inc.,                                  Case No.: 8:24-cv-01667-SDM-UAM

        Plaintiffs,

v.

Pacific Lock Company, a/k/a Paclock,
and Gregory B. Waugh,

        Defendants.

_____/

## DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW BY DEFENDANTS, PACIFIC LOCK COMPANY AND GREGORY B. WAUGH

Pursuant to the Court's August 26, 2024 Order [Dkt. #20], the parties' Case Management Report [Dkt. 17], and Rule 56, Federal Rules of Civil Procedure, Defendants, Pacific Lock Company ("PacLock") and Gregory B. Waugh ("Mr. Waugh") move on the following grounds for the Court to enter summary judgment in their favor on all three counts of Plaintiffs' Amended Complaint[1].

## I.    INTRODUCTION

This case should never have been brought and is now ripe for complete disposal. Summary judgment should be entered in favor of Defendants on all three claims of the Amended Complaint.    Plaintiff, Ronald Lee's asserted NDA is an invalid and

---

[1] Plaintiffs' claim for tortious interference in their original Complaint was voluntarily dismissed in the face of a served Rule 11 motion.

unenforceable restrictive covenant.  Plaintiffs' misappropriation claims fail because none of the information was actually a secret or confidential, and no information shows that Defendants actually used any of Plaintiffs' claimed trade secrets.

Count I of Plaintiffs' Amended Complaint alleges that Defendant PacLock breached an August 25, 2014, Mutual Non-Disclosure Agreement (the "NDA") with Plaintiff Ronald Lee, II ("Lee"). PacLock's alleged breach was using Lee's "confidential and proprietary information" in September of 2023 to launch a lock product that competes with an unpatented product of Plaintiff Proven Industries, Inc. ("Proven"). The Amended Complaint alleges PacLock's breach occurred more than nine (9) years after: (a) execution of the NDA and (b) when Plaintiff Proven began publicly selling its lock product. Notably, Lee disclosed his supposed "confidential and proprietary" information only telephonically nine (9) years before filing this case.

In Counts II and III, both Plaintiffs assert claims for misappropriation of trade secrets against both Defendants. Counts II and III are based on the same allegations as Count I and assert, respectively, violations of the Federal Defense of Trade Secrets Act (the "DTSA") and the Florida Uniform Trade Secrets Act ("FUTSA").

Discovery closed on August 29, 2025[2], and made clear that no genuine dispute exists as to any material fact showing that Defendants are entitled to entry of summary judgment in their favor on all three counts of Plaintiffs' Amended Complaint.

---

[2] Less than three (3) hours before discovery closed, Plaintiffs filed a Motion to Compel [Dkt. #48] relating solely to damages discovery. A week later they substantively amended that motion [Dkt. #49]. Because Plaintiffs' 11th hour motion relates only to damages, it does not stave off entry of summary judgment in favor of Defendants.

## II.    STATEMENT OF UNDISPUTED FACTS

The undisputed facts come from: (1) Plaintiffs' Amended Complaint [Dkt. #42]; (2) the April 17, 2025, Deposition of Lee as Proven's Corporate Representative and in his individual capacity[3]; (3) the March 19, 2025, Deposition of Anthony Sansone[4], who is an engineer and who was an independent contractor for Proven; and Plaintiffs' respective February 5, 2025, Answers to PacLock's First Set of Interrogatories[5].

### A. The NDA

1.    Lee and PacLock entered into the NDA on August 26, 2014. Amended Complaint, Ex. A [Dkt. #42-1]. They are the only parties to the NDA. *Id.*

2.    The NDA contains no temporal or geographic limitations. *Id.* Lee intends for the NDA obligations to "last for 100 years" or "indefinitely". Lee Depo, p. 240, lines 3-11; p. 272, lines 17 – 23.

3.    Nothing in the NDA limits its obligations to information that is kept confidential. The NDA's restrictions apply even if the information becomes publicly known or readily accessible through legitimate means. Amended Complaint, Ex. A.

4.    The NDA's non-use and non-disclosure obligation is limited to information concerning a "Trade [sic.] secret of a coupler lock for trailers that will use

---

[3] Cited as "Lee Depo, p. __, line __" and cited portions attached as Exhibit A.
[4] Cited as "Sansone Depo, p. __, line __" and cited portions attached as Exhibit B.
[5] The Answers of Lee and Proven to PacLock's First Set of Interrogatories ("Plaintiffs' Rogg Answers") are attached as Exhibits C and D, respectively.

a puck style lock", which information was conveyed by Lee to PacLock "in confidence". *Id.*, first WHEREAS clause and para. 2.

5.     The NDA contains a non-competition covenant limited to using information relating to a "Provisional Patent", although neither Lee nor Proven had any rights to a provisional patent at the time the NDA was executed. *Id.*, para. 7; Lee Depo, p. 240, line 15 through p. 241, line 8.

6.     The Amended Complaint does not allege that the restrictions in the NDA were reasonably necessary to protect any legitimate business interest of Lee. Amended Complaint, Ex. A.

7.     The Amended Complaint alleges PacLock breached the NDA by "causing, directing and authorizing Paclock to design, create, manufacture and sell" "a trailer hitch coupler lock, designated the UCS-77S Heavy-Duty Trailer Coupler Lock (the 'UCS Lock')" in September of 2023. Amended Complaint, paras. 33, 38.

**B. Lee Has Not Suffered Any Damages**

8.     Lee, individually, has not sold any lock products. Lee Depo (Confidential portion)[6], p. 6, lines 14-17.

**C. Plaintiffs' Changing Position on Allegedly Misappropriated Trade Secrets**

9.     Plaintiffs' Rogg Answers claim "each Defendant misappropriated" the following seven (7) trade secrets:

a.     "The market share potential for the new trailer coupler lock design. The then-untapped market involved a need for high security protection for trailers when disengaged from a towing apparatus**.** Plaintiff

---

[6] The parties agreed in writing that the cited question and answer are <u>not</u> confidential.

Lee shared his knowledge and experience with this market need with Defendants along with his knowledge of the shortcomings of the existing offerings" ("Potential Market Share Info");

b.      "Product fabrication materials. The trailer coupler lock could be fabricated out of sheet metal and pipe – readily available materials that did not require molding or the use of cast aluminum. Lee's design also employed the use of a "puck" lock component" ("Materials Info");

c.      "Full face design. Lee's new trailer coupler lock design employed the use of a full face design on a 5" inch pipe whereas the prior designs utilized a half-moon design on a 4"pipe" ("Full Face Design Info");

d.      "Lee's trailer coupler lock design also envisioned the optional bolting of the "puck" lock onto the front flat face of the coupler lock body, hence the need for the full face design change" ("Puck Lock Bolting Info");

e.      "The ongoing information stream regarding the profitability of my trailer coupler lock design in this nascent market. . . . Additionally, Defendants would divine Proven's sales volume since Defendants were selling Proven all of our "puck" locks needed for the product" ("Profit and Sales Info");

f.      "Trailer door lock design. From this business relationship, Defendants learned of Lee's design for a trailer door lock. From this relationship, Defendants also learned of the size and dimensions of the "puck" lock utilized by Proven for this product" ("Trailer Door Lock Info")[7]; and

g.      "The wing design for trailer coupler lock" ("Wing Design Info").

*See* Plaintiffs' Rogg Answers, Interrogatory 1[8].

---

[7] Nothing in the Amended Complaint mentions a "trailer door lock design" or alleges that Defendants used any such information. This item should be disregarded.

[8] Plaintiffs originally designated the information in Plaintiffs' Rogg Answers, Interrogatory 1 as "Confidential."  However, on September 18, 2025, counsel for Plaintiffs agreed to remove the "Confidential" designation for purposes of Defendants' motion for summary judgment.  Defendants agreed not to argue that the removal of the designation, itself, constitutes a waiver of an argument that the information is a trade secret or "confidential".

10.    During the Lee Depo Two and a half (2 ½) months later, Plaintiffs identified only the following three (3) alleged trade secrets as being misappropriated by Defendants: (a) Full Face Design Info (Lee Depo, p. 237, line 7 -- p. 239, line 25); (b) Puck Lock Bolting Info. (*Id.*, p. 243, line 17 -- p. 244, line 17; p. 248, line 15 -- p. 249, line 10); and (c) Wing Design Info (*Id*, p. 249, line 22 -- p. 250, line 1).

11.    Even after reviewing Plaintiffs' Rogg Answers, Lee did not identify any other information that Plaintiffs contend PacLock or Mr. Waugh improperly used. *Id*, p. 252, line 21 -- p. 253, line 25.

12.    Eight days later on April 25, 2025, Plaintiffs filed their Amended Complaint alleging Lee <u>telephonically described</u> to Defendants **"[o]n or about August 27, 2014"** the following as "confidential information under the NDA":

- ■ "the **2516 Lock**, including the full faceplate, the 1/4" thick slide and the market for the **2516 Lock** . . . A drawing of the 2516 Lock as described by Lee to Waugh in confidence is attached as Exhibit B";

- ■ "market data and projections for this **nascent and untapped** market niche". (Emphasis added).

Amended Complaint, paras. 22, 24.

13.    The Amended Complaint further alleges:

- ■ "During **the fourth calendar quarter of 2014**, Proven began purchasing hidden shackle padlocks from Paclock for incorporation into **the 2516 Lock** manufactured by Proven.

- ■ Proven continued purchasing hidden shackle padlocks from Paclock **until 2019**.

- ■ **During this time frame**, Defendants gleaned additional confidential and proprietary information within the protective umbrella of the

<u>NDA related to **Lee's 2516 Lock unit volume and price margins along with other confidential and proprietary market data**</u>." (Emphasis added).

*Id.*, paras. 27-29.

14.    The drawings attached to the Amended Complaint as Exhibit B were <u>never</u> provided to Defendants. Lee Depo, p. 263, lines 3-17.

15.    Plaintiffs disclosed confidential information to Defendants only by telephone, not in writing. *Id*, p. 267, line 25 – p. 268, line 3; p. 281, lines 23 – 25.

**D. Plaintiffs Cannot Recall of When Alleged Trade Secrets were Disclosed**

16.    Lee cannot recall when, within a three-year period, he disclosed Puck Lock Bolting Info or Wing Design Info to the Defendants. *Id*, p. 245, lines 10-18 (Puck Bolting Info "Between 2016 to 2018"); p. 250, lines 2-5 (Wing Design Info "Probably within the same window of time, 2016-2018").

**E. Plaintiffs Did Not Keep Their Alleged Trade Secrets Confidential.**

17.    When Lee "first conceived of the 2516" lock, he provided a sample to "someone with a CAD", who was not employed by Proven and who did not have a non-disclosure agreement, to create detailed schematic drawings of that lock. *Id.*, p. 87, line 16 – p. 89, line 23; p. 93, lines 6-13.

18.    Lee sent the drawings for the 2516 lock to a fabricator without a non-disclosure agreement. *Id.* at p. 90, lines 14 – 25.

19.    Plaintiffs disclosed detailed information about Proven's trailer coupler lock ("TC Lock") to Mr. Sansone, while he was an independent contractor <u>without a</u>

non-disclosure agreement, years before any alleged misappropriation by Defendants. Sansone Depo, p. 16, lines 8-13; p. 20, lines 16-17; p. 76, line 25 – p. 77, line 23.

20.    Proven's employees did not sign a formal non-disclosure agreements. Lee Depo, p. 106, line 17 –p. 107, line 19.

### F. The Alleged Trade Secrets were Publicly Known, Readily Accessible Through Legitimate Means, and/or Valueless When Allegedly Misappropriated.

**The allegedly "nascent" market for TC Locks was not "nascent" or "untapped"**

21.    The market for trailer hitch coupler locks existed well before the August 2014 NDA. Sansone first became aware of trailer hitch coupler locks in the "**mid to late '90s**." Sansone Depo, p. 132, line 18 - p. 133, line 8.

22.    **No later than May 6, 2013**, GusHill Industries sold a "Model 2516" TC Lock with the same design and components as Proven's 2516 TC Lock, including a PacLock puck lock. Lee Depo, p. 125, line 20 – p. 127, line 19.

23.    Proven began selling its 2516 TC Lock using a puck lock in late **2014 or 2015**. *Id.,* p. 131, lines 12 – 13; p. 182, lines 4 – 8.

### G. Nothing About Proven's TC Locks is a Trade Secret or Confidential

24.    The materials and components of Proven's 2516 TC Locks are readily observable. *Id.,* p. 237, line 7 – p. 238, line 25; p. 252, lines 11 – 16.

25.    The wing design is "not a hidden feature" but is "readily apparent". Sansone Depo, p. 149, lines 17 -- p. 150, line 7.

26.    Proven first sold a TC Lock with a wing design before 2017 -- at least six (6) years before Defendants' alleged misappropriation. Lee Depo, p. 251, line 13 – p. 252, line 1; Amended Complaint, paras. 33, 38.

27.    "[S]omeone knowledgeable in fabrication" could look at a Proven TC Lock and both "know how it's made" and fabricate it. Sansone Depo, p. 135, line 21 – p. 136, line 1.

### H. Defendants Could Not Know Proven's Profit Margin

28.    Sansone could not calculate Proven's profit margin even knowing "the retail price and the cost of fabrication." *Id.* at p. 144, line 13 – p. 145, line 3.

### III.    SUMMARY JUDGMENT STANDARD

A summary judgment movant must show "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). PacLock and Mr. Waugh can meet their burden by showing that Plaintiffs "failed to make a sufficient showing on an essential element of [their] case with respect to which [they] ha[ve] the burden of proof. *Id.* at 323. If they do, then "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of [plaintiffs'] case necessarily renders all other facts immaterial." *Id.* Thus, if Plaintiffs cannot as a matter of law establish even a single element of a cause of action, summary judgment for Defendants on that cause of action must be entered.

## IV.   ARGUMENT

### A.   PACLOCK IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I

#### 1.   Elements for Lee's Breach of Non-Disclosure Agreement Claim

As a matter of law, Lee cannot establish a prima facie case for his breach of the NDA claim. The elements of a breach of contract claim are: (1) the existence of a valid enforceable agreement; (2) a material breach; and (3) damages. *Rauch, Weaver, Norfleet, Kurtz & Co., Inc. v. AJP Pine Island Warehouses, Inc.*, 313 So. 2d 625, 630 (Fla. 4th DCA 2021). "When a breach-of-contact action is based upon enforcement of a restrictive covenant, however, the plaintiff must plead and prove additional elements to establish that the restrictive covenant is a valid restraint of trade." *Id.*

> [T]he term "restrictive covenants" includes all contractual restrictions upon competition, such as ***noncompetition***/nonsolicitation ***agreements***, ***confidentiality agreements***, exclusive dealing agreements, and all other contractual restraints of trade. (Emphasis added).

*Id.*, quoting *Henao v. Prof'l Shoe Repair, Inc.*, 929 So. 2d 723, 726 (Fla. 5th DCA 2006).

To be an enforceable restrictive covenant under Section 542.335, Florida Statutes[9]: (1) it must be "set forth in a writing signed by the person against whom enforcement is sought"; (2) the party seeking to enforce the restrictive covenant "***shall plead and prove*** the existence of one or more legitimate business interests justifying the restrictive covenant"; and (3) the party seeking to enforce the restrictive covenant "***shall plead and prove*** that the contractually specified restraint is reasonably necessary

---

[9] For purposes of this Motion, Defendants stipulate Florida law governs the NDA.

to protect the legitimate business interest or interests justifying the restriction." *Rauch*, 313 So. 2d at 630 (emphasis in original). Section 542.335(1) also requires restrictive covenants, such as the NDA, to be "reasonable in time, area, and line of business". "Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." Section 542.335(1)(b), Florida Statutes.

### 2. The NDA is an Invalid and Unenforceable Restraint of Trade

The NDA's "confidentiality" and "noncompetition" agreements make it a restrictive covenant under Section 542.335. *Rauch*, 313 So. 2d at 630; *see also Henao*, 929 So. 2d at 726.

The NDA is invalid and unenforceable under Section 542.335, Florida Statutes, because the NDA's restrictions on PacLock: (a) are not necessary to protect Lee's *legitimate* business interests and (b) lack any temporal or geographic limitations.

The NDA's restriction defects are not merely hypothetical. They are exactly what Lee seeks to enforce against PacLock in this case. First, the NDA does not protect any legitimate business interest of Lee because: (a) he does not sell any locks (Undisputed Material Facts, para. 8); and (b) Lee's supposed "confidential" information allegedly used by PacLock was not kept confidential, but (i) was disclosed by Lee to others not under any confidentiality obligation, (ii) became publicly available; and/or (iii) was valueless before PacLock's alleged use of that information in September 2023. *Id.*, paras. 17-28.

Because the NDA does not further any legitimate business interest of Lee, the NDA is "void and unenforceable" and the Court should enter summary judgment for

PacLock on Count I. *See Blue-Grace Logistics LLC v. Fahey*, 653 F. Supp. 3d 1172, 1178–79 (M.D. Fla. 2023), <u>appeal dismissed,</u> No. 23-10623-GG, 2023 WL 3691014 (11th Cir. Apr. 12, 2023) (granting summary judgment for defendants on plaintiff's breach of restrictive covenant claims).

Second, Lee testified he intended for the NDA restrictions to "last for 100 years" or "indefinitely". Undisputed Material Facts, para. 2. Because the NDA is infinite in duration, it is unenforceable. *See* Section 542.335(1), Florida Statutes.

**3. PacLock Did Not Breach the NDA**

The undisputed evidence establishes that PacLock did not breach the NDA.

　　a. <u>The NDA's Only Protected Information was NOT Confidential</u>

The NDA expressly defines the supposed information of Lee that it protects. In clear and unequivocal language the NDA states:

> Inventor may provide certain CONFIDENTIAL INFORMATION, PROPRIETARY INFORMATION and materials **relating to a Trade [sic.] secret of a coupler lock for trailers that will use a puck style lock (hereinafter "Trade Secret")** . . . . (Emphasis added).

Amended Complaint, Ex. A, p. 1, first "WHEREAS" clause. The NDA then expressly limits PacLock's sole non-disclosure obligation to information "concerning said trade secret" that Lee discloses "in confidence" by Lee:

> Recipient agrees to accept and hold such CONFIDENTIAL INFORMATION, PROPRIETARY INFORMATION, and information **concerning said trade secret** which is disclosed to Recipient [PacLock] by Inventor [Lee] in confidence, and to make no disclosure or use of such CONFIDENTIAL INFORMATION, PROPRIETARY INFORMATION, or information **concerning said trade secret,** for any purpose, other than for the purpose of considering the said collaboration.

*Id.,* para. 2 (emphasis added).

PacLock did not breach the NDA's non-disclosure obligation because it never disclosed or used information disclosed in confidence by Lee concerning a coupler lock for trailers that will use a puck style lock. Plaintiff Lee's only information protected by the NDA has two components: (1) it concerns a "Trade [sic.] secret of a coupler lock for trailers that will use a puck style lock" and (2) it must have been conveyed by Lee to PacLock "in confidence".

As to the first component, the supposed trade secret information must have existed as of August 25, 2014. The "Trade [sic.] secret of a coupler lock for trailers that will use a puck style lock" was Lee's lock as he conceptualized it no later than August of 2014. However, the design of Lee's conceptualized 2516 lock was not original – it merely copied GusHill's Model 2516 lock. Undisputed Material Facts, para. 22.

Second, Lee never treated that supposed "trade secret" lock as confidential. Lee provided a sample of that lock to "someone with a CAD" to produce detailed drawings and then gave those detailed drawings to a fabricator, neither of whom were bound by a non-disclosure agreement. *Id.*, para. 17-19. Obviously, that lock was no longer confidential after Proven started selling it in late 2014 or 2015. *Id.*, para. 23.

### 4.  Lee has Not Suffered Any Damages

Lee and not co-Plaintiff Proven is the sole claimant under Count I. As a matter of law, Lee could not have suffered any damages as a result of PacLock's alleged breach of the NDA (making and selling TC Locks). Lee, individually, does not sell

locks. *Id.*, para. 8. Without damages, Lee cannot establish an element of his claim against PacLock for breach of the NDA. *See Rauch*, 313 So. 2d at 630. Accordingly, that claim fails as a matter of law.

### 5. The NDA Contains a Material Misrepresentation and is Void

Although paragraph 7 of the NDA falsely represents that Lee possessed a "Provisional Patent", Lee testified that he did <u>not</u> have a provisional patent at that time. Undisputed Material Facts, para. 5.

Mr. Waugh relied upon the false representation in the NDA about the Provisional Patent and that representation materially influenced his decision to agree to the NDA on behalf of PacLock. *See* September 15, 2025, Declaration of Gregory Waugh, paras. 5-11[10]. Consequently, the NDA is voidable at PacLock's election. *Buyer's Choice Auto Sales, LLC v. Paul Beach Motors, LLC*, 391 So. 3d 463, 468 (Fla. 4th DCA 2024). PacLock asks that the NDA be voided. The Court should find that the NDA is void based on Lee's false representation that he possesses a provisional patent.

For all the reasons stated above, summary judgment should be entered in favor of PacLock on Count I of the Amended Complaint.

### B. PLAINTIFFS' MISAPPROPRIATION OF TRADE SECRET CLAIMS

The elements of a protectable trade secret under the DTSA and FUTSA are materially the same. The same is true for what constitutes "misappropriation" under each statute. Plaintiffs specifically allege that the facts underlying its DTSA claim and

---

[10] The Declaration of Gregory Waugh is attached as Exhibit E.

its FUTSA claim are "the same". Amended Complaint, para. 60. Thus, Plaintiffs supposed "Trade Secrets" and the Defendants' alleged misappropriation are addressed below collectively as to the DTSA and FUTSA.

### 1. "Trade Secret" Under the DTSA and FUTSA

The DTSA and FUTSA both limit "trade secret" protection to information that: (1) is the subject of reasonable efforts to maintain its secrecy; and (2) derives economic value from not being generally known or readily ascertainable though proper means by others. *See* 18 U.S.C. § 1839(3) and Section 688.002(4), Florida Statutes. Information that is generally known or readily accessible to third parties does not qualify for trade secret protection. *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998).

### 2. Identifying Plaintiffs' Alleged "Trade Secrets"

Plaintiffs' Amended Complaint is the last word on their alleged trade secrets. The Amended Complaint was filed more than nine (9) months into the case and after Plaintiffs answered interrogatories and they were deposed. As such, the Amended Complaint limits Plaintiffs'' trade secrets at issue.

Plaintiffs' DTSA and FUTSA claims never identify the alleged "Trade Secrets" at issue. The DTSA and FUTSA claims incorporate paragraphs 1-40 then recite statutory elements regarding their "Trade Secrets" without identifying them or defining the capitalized term. Amended Complaint, paras. 49, 51-56, 58, 61, 63-66. Plaintiffs' failure to describe their alleged "Trade Secrets" with specificity justifies entry of summary judgment for Defendants on Plaintiffs' DTSA and FUSTSA claims.

*See Hayden v. Int'l Business Machines Corp.*, 2025 WL 1697021, *11 (S.D.N.Y. June 17, 2025)(granting summary judgment in favor of defendants on DTSA claim). Plaintiffs' allegations regarding their "confidential and proprietary information" cannot be their "Trade Secrets" because "confidential information is ***not*** equivalent to trade secrets." *Elsevier, Inc. v. Doctor Evidence, LLC,* 2018 WL 557906, *5 (S.D.N.Y. Jan. 23, 2018) (emphasis added).

Even if Plaintiffs' "Trade Secrets" are interpreted to be their alleged "confidential and proprietary information", none of that information rises to the level of protectable trade secrets.

Plaintiffs allege that "confidential and proprietary information" was disclosed to or "gleaned" by Defendants in two distinct time periods. First, Lee allegedly disclosed "[o]n or about August 27, 2014, in a telephone conversation" a description of Proven's: (a) "2516 Lock, including the full faceplate, the 1/4" thick slide and the market for the 2516 Lock"; (b) "as well as market data and projections for this nascent and untapped market niche." *Id.*, para. 22. Second, the Amended Complaint broadly alleges that "Defendants gleaned additional confidential and proprietary information" from "[d]uring the time frame" of "the fourth calendar quarter of 2014 . . . until 2019" "related to Lee's 2516 Lock unit volume and price margins along with other confidential and proprietary market data". *Id.*, paras. 27-29.

Therefore, read most favorably to Plaintiffs, the Amended Complaint identifies their alleged "Trade Secrets" as:

- ■ a description of Proven's 2516 lock as it existed in August 2014;

16

- Lee's August 2014 market data and projections for "this nascent and untapped market niche" for Proven's 2516 lock;

- Proven's 2516 Lock unit volume and price margins existing from late 2014 "until 2019"; and

- "other confidential and proprietary market data" existing from late 2014 "until 2019".

### 3. None of Plaintiffs' alleged "trade secrets" are protectable.

Plaintiffs' "confidential and proprietary information" (even assuming that all such information is included in Plaintiffs' term "Trade Secrets") is not protectable as trade secrets under the DTSA or FUTSA. None of that alleged "confidential and proprietary information": (a) was treated by them as "confidential"; (b) had value from not being publicly known at the time of the alleged misappropriation; or (c) both.

Plaintiffs did not treat Lee's 2014 description of Proven's 2516 lock as confidential. Lee gave a sample lock to "someone with a CAD" and detailed drawings to a fabricator, each without a non-disclosure agreement. *See* Undisputed Material Facts, paras. 16, 17. Moreover, Proven's 2516 lock was on sale in "late 2014 or 2015". *Id*. para. 23. Though not alleged in the Amended Complaint, there was nothing "confidential" about Plaintiffs' Materials Info, Full Face Design Info, Puck Lock Bolting Info, and Wing Design Info. Those features were all readily observable from Proven's publicly sold TC Locks. *See Id*., paras. 24-27. Thus, none of that information qualifies for trade secret protection. *See Am. Red Cross*, 143 F.3d at 1410.

All of the information above was publicly known and could not have possessed any value as a result of <u>not</u> being so known. For this reason as well, none of that

information qualifies as protectable "trade secrets" as a matter of law. *See* 18 U.S.C. § 1839(3) and Section 688.002(4), Florida Statutes.

The remainder of Plaintiffs' supposed "Trade Secrets" would not, as a matter of law, have any value as a result of not being publicly known at the time of their alleged misappropriation in September of 2023. Those supposed "trade secrets" are: (a) Lee's "nascent and untapped market" ***projections*** from August 2014 – over nine (9) years before their alleged misappropriation; and (b) Proven's unit sales and profit margins no more recent than four (4) years before the alleged misappropriation.

Plaintiffs never allege any facts stating how or why their undefined "Trade Secrets" possess independent value from not being generally known or readily ascertainable. Plaintiffs' DTSA claim merely parrots the statutory language regarding their undefined "Trade Secrets" possessing value (Amended Complaint, para. 52). Plaintiffs' FUTSA claim fails to do even that.

A good reason exists for Plaintiffs' glaring omission. No reasonable person could conclude that the "confidential and proprietary information" allegedly disclosed telephonically by Lee in August 2014 held any value by September of 2023. Lee's projections in mid-2014 of the "nascent" and "untapped" market were irrelevant after that market was established for more than nine (9) years. Even the premise of this supposed trade secret is false. The market was neither nascent nor untapped in August of 2014. *See* Undisputed Material Facts, paras. 21, 22. Regardless, Lee's August 2014 projections are not protectable trade secrets. "[I]nformation consisting simply of business possibilities or goals is not a trade secret." *Hayden,* 2025 WL 1697021 at *18.

Plaintiffs' supposed trade secrets allegedly "gleaned" by Defendants relating to Proven's profit margins and sales of its TC Locks from the "fourth quarter 2014" "until 2019" also lacked any value. Proven's profit margin is not able to be calculated even knowing "the retail price and the cost of fabrication." *See* Undisputed Material Facts, para. 28. Whatever information Defendants allegedly gleaned "until 2019" would have been valueless because it was both insufficient for Defendants to determine Proven's profit margins and stale by the time of the alleged misappropriation more than four (4) years later in September 2023.

Proven's "2516 Lock unit volume" allegedly "gleaned" by Defendants from late 2014 "until 2019" was known to PacLock *from its own records*. The Amended Complaint alleges that Proven purchased from PacLock the puck locks for use on Proven's 2516 Lock during that same time period. Amended Complaint, para. 27, 28. Thus, PacLock's records of its puck lock sales to Proven revealed how many puck locks Proven sold. Thus, Plaintiffs own allegations make clear that Defendants' "gleaned" Proven's unit volume through "legitimate means", rendering such "unit volume" unprotectable. *See Am. Red Cross*, 143 F.3d at 1410.

Plaintiffs' last type of supposedly "confidential and proprietary" information is far too vague both in timing and content to be protectable. Plaintiffs allege that sometime from the "last quarter of 2014" "until 2019" Defendants "gleaned" "other confidential and proprietary market data." Amended Complaint, paras. 27-29. Yet, Plaintiffs never alleged or described in discovery any of its alleged "other confidential and proprietary market data". Plaintiffs' vague allegations are insufficient to stave off

19

summary judgment. *See Hayden*, 2025 WL 1697021 at *12; *Blue-Grace Logistics*, 653 F. Supp. 3d at 1179–1180 (granting summary judgment for defendants).

### 4. Misappropriation Under the DTSA and FUTSA

The DTSA and FUTSA each define "misappropriation" as the

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

1. Used improper means to acquire knowledge of the trade secret; or
2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
   a. Derived from or through a person who had utilized improper means to acquire it;
   b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
   c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

*See* 18 U.S.C. § 1839(5); Section 688.002(2), Florida Statutes.

### 5. The Defendants' Alleged "Misappropriation"

The Amended Complaint merely alleges without any facts that Defendants misappropriated Plaintiffs' undefined "Trade Secrets." Amended Complaint, paras. 55, 63. Plaintiffs' DTSA and FUTSA claims do incorporate preceding paragraphs 1-40, which include the following allegations:

On or about September 19, 2023, Paclock began producing and selling a trailer coupler lock, designated the UCS-77S Heavy-Duty Trailer Coupler Lock (the "UCS Lock"). Amended Complaint, para.33.

> On or about January 8, 2024, Plaintiffs informed Defendants, *inter alia*, that they breached the NDA by causing, directing and authorizing Paclock to design, create, manufacture and sell the UCS Lock. *Id.*, para. 38.

No other allegations in the Amended Complaint could be read to describe the Defendants' "misappropriation." Thus, Defendants assume, for purposes of this Motion that PacLock's designing, creating, making, and selling its UCS Lock is the alleged misappropriation.

### 6. There is No Evidence of Defendants' Alleged "Misappropriation"

There is no evidence that either PacLock or Mr. Waugh used any of Plaintiffs' "Trade Secrets" to design, create, make, and sell PacLock's UCS Lock. Even if one assumes that PacLock copied Proven's 2516 lock, all the information needed to do so was publicly available and readily ascertainable no later than 2015, long before the alleged misappropriation occurred in September 2023. *See* Undisputed Material Facts, paras. 24-27. No evidence even suggests that either PacLock or Mr. Waugh used anything else to design, create, make, and sell PacLock's UCS Lock.

### 7. Defendants' Alleged "Misappropriation" is Legitimate Competition

Plaintiffs' apparent purpose for this case is to restrain PacLock from lawful competition. The first relief Plaintiffs seek is:

> The entry of a preliminary and permanent injunction enjoining Defendants from directly or indirectly making, using, selling and offering to sell any trailer coupler lock that includes a full faceplate and a 1/4" thick slider or in any further way exploiting Plaintiffs' confidential and proprietary Trade Secrets;

Amended Complaint, p. 15, para A. Lee seeks this same relief although he does not even sell locks. *Id.*, para. 48.

As a matter of law, PacLock's designing, creating, manufacturing, and selling its UCS Lock is <u>not</u> misappropriation -- it is lawful competition. Nothing prevents PacLock from "making, using, selling and offering to sell" a "trailer coupler lock that includes a full faceplate and a 1/4" thick slider". Those features have been readily observable on Proven's TC Locks for years before the alleged misappropriation in September 2023. *See* Undisputed Material Facts, paras. 24-27. "[T]he case law militates strongly in favor of the conclusion that a new product idea that will be open and visible once brought to market cannot, as a matter of law, constitute a trade secret." *My Mavens, LLC v. Grubhub, Inc.,* 2023 WL 5237519, *19 (S.D.N.Y. Aug. 14, 2023)(finding aspects of the software filter would be visible to any website user and therefore was not a trade secret).

### C. SUMMARY JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS ON COUNT II

To establish a claim under the DTSA, Plaintiffs must demonstrate "(1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1087 (10th Cir. 2025) *citing dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023) (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021)).

"Although the existence of a trade secret is usually treated as a question of fact, summary judgment may be appropriate where it is clear that the information at issue is not actually secret or there is no discernible economic value from that information not being generally known." *Hayden,* 2025 WL 1697021 at *11 (granting summary judgment in favor of defendants on DTSA claim).

For the reasons demonstrated above, Plaintiffs cannot, as a matter of law, establish the existence of a protectable trade secret or that either PacLock or Mr. Waugh misappropriated any protectable trade secret of Plaintiffs. Therefore, summary judgment should be entered in favor of both Defendants as to Count II of the Amended Complaint.

### D. SUMMARY JUDGMENT SHOULD ALSO BE ENTERED FOR DEFENDANTS ON COUNT III

"To prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018)(affirming grant of summary judgment against plaintiff on its FUTSA claim). Although the question of whether something qualifies as a trade secret is "typically resolved" at trial, the Eleventh Circuit determined that summary judgment may be entered on a trade secret claim if "no reasonable jury could find that the … [i]nformation constituted a trade secret." *Id.* at 1298-99 (affirming entry of summary judgment).

Here, as in *Yellowfin Yachts,* no reasonable jury could conclude that either PacLock or Mr. Waugh misappropriated any protectable trade secret of Plaintiffs.

Thus, summary judgment should be entered in favor of both Defendants as to Count III of the Amended Complaint.

### E. DEFENDANTS SHOULD BE AWARDED THEIR ATTORNEYS' FEES AND COSTS

The DTSA and FUTSA both provide for an award of reasonable attorneys' fees and costs to prevailing defendants where such claims were made in bad faith. *See* 18 U.S.C. §1836(b)(3)(D); Section 688.005, Florida Statutes.

The Court should find that Plaintiffs filed their misappropriation of trade secrets claim in bad faith. Plaintiffs asserted such claims without any protectable trade secrets or any evidence of misappropriation in an apparent attempt to prevent lawful competition. They even reiterated those claims in their Amended Complaint, filed in order to drop their frivolous tortious interference claim in the face of a served Rule 11 motion. Notably, Plaintiffs filed their Amended Complaint <u>after</u> the Lee and Sansone depositions -- which depositions made clear that the trade secret claims were also frivolous. It is difficult to conceive of a more clear-cut case of bad faith. Accordingly, Defendants should be awarded entitlement to their reasonable attorneys' fees and costs in an amount to be determined after entry of summary judgment.

Alternatively, Defendants request leave to move for and fully brief their entitlement to an award of their reasonable attorneys' fees and costs following the Court's entry of summary judgment in their favor on Plaintiffs' misappropriation of trade secret claims.

## V.    CONCLUSION

The above analysis demonstrates that summary judgment should be entered for Defendants on all three counts of the Amended Complaint. It also shows why this case should never have been filed, say nothing of maintained after discovery closed.

As a matter of law, the NDA is invalid, unenforceable, and was not breached. Lee suffered no damages even if all the other NDA issues were to be resolved in his favor. Without damages, Lee's breach of NDA claim fails as a matter of law.

Plaintiffs failed to properly identify any alleged trade secrets. Even if Plaintiffs' alleged "Trade Secrets" are interpreted to be the alleged "confidential and proprietary information", their own testimony shows that information is not protectable as "trade secrets" under the DTSA or FUTSA. Most of the "trade secrets" identified by Plaintiffs were not kept confidential. None possesses independent value from not being publicly known. No evidence indicates either PacLock or Mr. Waugh misappropriated any of Plaintiffs' trade secret information. Those claims are wholly without merit.

Finally, the Court should find that Plaintiffs filed and maintained their misappropriation of trade secrets claims in bad faith and award Defendants' entitlement to their reasonable attorneys' fees and costs in an amount to be determined after entry of summary judgment.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 19, 2025, I filed a true and accurate copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Frank R. Jakes (frankj@jpfirm.com, mday@jpfirm.com, pattit@jpfirm.com), JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP, 400 North Ashley Drive, Suite 3100, Tampa, Florida 33602.

*/s/ Richard E. Fee*
Richard E. Fee
Florida Bar No. 813680
Kathleen M. Wade
Florida Bar No. 127965
FEE & JEFFRIES, P.A.
1227 N. Franklin Street
Tampa, Florida 33602
(813) 229-8008
(813) 229-0046 (Facsimile)
rfee@feejeffries.com
kwade@feejeffries.com
bszabo@feejeffries.com
valeshire@feejeffries.com

*Lead Trial Counsel for Defendants,*
*Pacific Lock Company a/k/a PacLock,*
*and Gregory B. Waugh*