# EXHIBIT C

# UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

Ronald Lee, II, and Proven
Industries, Inc.,

      Plaintiffs,              Case No.: 8:24-cv-01667-SDM-UAM

v.

Pacific Lock Company a/k/a Paclock
and Gregory B. Waugh,

      Defendants.

_____/

## PLAINTIFF RONALD LEE II's NOTICE OF SERVING ANSWERS AND OBJECTIONS TO DEFENDANT PACIFIC LOCK COMPANY'S FIRST SET OF INTERROGATORIES

Plaintiff, RONALD LEE, II, by and through his undersigned counsel, hereby gives notice of serving his Answers and Objections to Defendant Pacific Lock Company's First Set of Interrogatories.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of February, 2025, I caused service of a true and correct copy of the foregoing via email to counsel for the Defendants Richard E. Fee at rfee@feejeffries.com, kwade@feejeffries.com, and bszabo@feejeffries.com.

/s/ Frank R. Jakes
FRANK R. JAKES
*Attorney for Plaintiffs*

#10433853

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Ronald Lee, II, and Proven
Industries, Inc.,

    Plaintiffs,    Case No.: 8:24-cv-01667-SDM-UAM

v.

Pacific Lock Company a/k/a Paclock
and Gregory B. Waugh,

    Defendants.

_____/

## PLAINTIFF RONALD LEE II's ANSWERS AND OBJECTIONS TO DEFENDANT PACIFIC LOCK COMPANY'S FIRST SET OF INTERROGATORIES

  Pursuant to Rule 33, Federal Rules of Civil Procedure, Plaintiff Ronald Lee II answers and objects to Defendant, Pacific Lock Company a/k/a Paclock's First Set of Interrogatories as follows:

## INTERROGATORIES

  1. Describe in complete factual detail all of Your confidential information that You allege in the Complaint each Defendant used without authorization.

**CONFIDENTIAL**

**<u>Answer</u>: (1) The market share potential for my new trailer coupler lock design. The then-untapped market involved a need for high security**

protection for trailers when disengaged from a towing apparatus. I shared my knowledge and experience with this market need with Defendants along with my knowledge of the shortcomings of the existing offerings; (2) Product fabrication materials. My trailer coupler lock could be fabricated out of sheet metal and pipe – readily available materials that did not require molding or the use of cast aluminum. My design also employed the use of a "puck" lock component; (3) Full face design. My new trailer coupler lock design employed the use of a full face design on a 5" inch pipe whereas the prior designs utilized a half-moon design on a 4" pipe; (4) My trailer coupler lock design also envisioned the optional bolting of the "puck" lock onto the front flat face of the coupler lock body, hence the need for the full face design change; (5) The ongoing information stream regarding the profitability of my trailer coupler lock design in this nascent market. I knew that Defendants would learn my retail pricing for the trailer coupler lock product and with this knowledge could derive the approximate profit margin since Defendants would know the approximate cost for fabricating the sheet metal required for the product and would also know the price that Defendants were selling their "puck" locks. From this information stream, Defendants could extrapolate the approximate profit margin. Additionally, Defendants would divine my sales volume since Defendants were selling me all of our "puck" locks needed for the product; (6) Trailer door lock design. From our business relationship, Defendants learned of my design

for a trailer door lock.  From this relationship, Defendants also learned of the  size and dimensions of the "puck" lock utilized by Proven for this product; and (7) The wing design for  trailer coupler lock.

2.    For each piece of confidential information identified in answer to Interrogatory No. 1, describe in complete factual detail the circumstances under which the confidential information was disclosed to, and used by, each Defendant and, in Your answer, identify the date(s) of disclosure and use and state how the confidential information was disclosed to and used by each Defendant.

**<u>Answer</u>: With the exception of #5, all of the confidential information was disclosed telephonically. The timing of the disclosures began immediately after the Mutual NDA was executed and ended with the demise of the business relationship between the parties in 2019. Regarding #5, this ongoing information stream was available to Defendants over time as Defendants learned of my design for the trailer coupler lock and could extrapolate margins and volume as described in my answer to Interrogatory #1. This confidential information was then used by Defendants to manufacture their identical, competitive products, eventually brought to market in late-2023.**

3.      Describe in complete factual detail all reasonable efforts You took to maintain the confidentiality of the confidential information You identified in answer to Interrogatory No. 1.

**Answer:** **Before imparting any confidential information to Defendants, I required Defendants to execute the Mutual NDA. I relied on the belief that Defendants would honor their contractual commitments therein. Further, because of the Defendants' execution of the Mutual NDA, I did not seek early patent protection for my trailer coupler lock design.**

4.    Describe in complete factual detail each and every trade secret of

Yours that You allege in the Complaint each Defendant misappropriated.

**Answer**: Same as answer to Interrogatory #1.

5.      For each trade secret identified in answer to Interrogatory No. 4, describe in complete factual detail the circumstances under which each Defendant "acquired, used, and disclosed" the trade secret as alleged in Paragraph 54 of the Complaint and, in Your answer, identify the dates of acquisition, use, and/or disclosure and state how the trade secret was "acquired, used, and disclosed" by each Defendant.

**<u>Answer</u>: Same as Answer to Interrogatory #2.**

6.    Describe in complete factual detail all reasonable efforts You took to
maintain the secrecy of the trade secrets You identified in answer to Interrogatory
No. 4.

**Answer**: **Same as answer to Interrogatory #3.**

7.    Describe in complete factual detail the actual or potential
independent economic value You believe is derived from the trade secrets You
identified in answer to Interrogatory No. 4, and the methodology or basis for Your
valuation.

**<u>Answer</u>: By developing the design of my trailer coupler lock and being first
to the market, Proven has been able to create and expand a market which
did not really exist prior to the introduction of my products. Knowing the
potential for the market size and profit margins for the product has allowed
and continues to allow Proven to dedicate resources to product
enhancements and new product development. Similarly, these trade secrets
permit Proven to properly dedicate resources to marketing and advertising
of the products. While competitors who lack access to these trade secrets (i.e.
competitors other than Defendants) may generally know that Proven trailer
coupler lock products are popular, they lack the nuanced understanding of
the potential for market growth and profitability. To date, a valuation of the
independent economic value has not been conducted.**

8.      Identify each and every individual or business entity that has entered into an agreement with You that contained nondisclosure, confidentiality, and/or trade secret provisions and state when they executed the agreement. This interrogatory specifically includes, but is not limited to, agreements with clients, vendors, suppliers, employees, and independent contractors.

**Answer: Pursuant to Fed. R. Civ. P. 33(c), Plaintiffs are producing documents in response to Requests #1, to Defendants First Request for Production of Documents that constitute these agreements.**

9.    Identify each and every individual or business entity to whom You

disclosed the confidential information that You identified in answer to

Interrogatory No. 1.

**Answer**: Other than Defendants, none.

10.     Identify each and every individual or business entity to whom You disclosed the trade secret information You identified in answer to Interrogatory No. 4.

**Answer**: Other than Defendants, none.

11.    Describe in complete factual detail the "irreparable harm" You allege You have suffered from each Defendant's actions as alleged in Paragraphs 58 and 68 of the Complaint.

> **Answer: By exploiting my trade secrets and confidential information in contravention of the Mutual NDA between the parties and the general principles of trade secret protection, Defendants are causing Plaintiff's irreparable harm by introducing virtually identical products into the marketplace that not only displace sales of Plaintiffs' products but damage Plaintiffs' reputation as the market leader in this distinct market niche.**

12.    Describe with specificity all contacts or communications You had with Peter Ganjian regarding (a) each Defendant, (b) the UCS-77S Heavy-Duty Trailer Coupler Lock, and/or (b) Mr. Ganjian's termination of services as a patent agent for You. For each such contact or communication, (i) state the date of the contact or communication and (ii) state the substance of the contact or communication.

**Answer: The only communication with Peter Ganjian that referenced Defendants was in initial telephonic communications that explained that Plaintiffs were referred by Defendants. There have been no communications with Peter Ganjian regarding Defendants' UCS-77S Heavy-Duty Trailer Coupler Lock. The only communication with Mr. Ganjian regarding his termination of his representation of Plaintiffs was a brief telephone conversation with Anthony Sansone which generally stated the content of Mr. Ganjian's e-mail advising of the termination.**

13.     For Your claim for breach of the Mutual Non-Disclosure Agreement in Count I of the Complaint, describe in complete detail (a) each element of damages You claim, (b) the approximate amount You claim for each such element, and (c) how You calculated each amount.

**<u>Answer</u>: Plaintiffs have suffered lost sales caused by Defendants' sale of its knock-off products. Plaintiffs' damages are in the form of lost profits for each of Defendants' sales multiplied by Plaintiffs profit margin for the products. This profit margin is reflected in its net profits calculation provided as part of Plaintiffs' document production subject to HIGHLY CONFIDENTIAL – AEO protection. This damage calculation remains ongoing insofar as Defendants continue to sell their knock-off products.**

14.    For Your claim for violation of the Federal Defense of Trade Secrets
Act in Count II of the Complaint, describe in complete detail (a) each element of
damages You claim, (b) the approximate amount You claim for each such element,
and (c) how You calculated each amount.

**<u>Answer</u>: Plaintiffs have suffered lost sales caused by Defendants' sale of its
knock-off products. Plaintiffs' damages are in the form of lost profits for
each of Defendants' sales multiplied by Plaintiffs profit margin for the
products. This profit margin is reflected in its net profits calculation
provided as part of Plaintiffs' document production subject to HIGHLY
CONFIDENTIAL – AEO protection. This damage calculation remains
ongoing insofar as Defendants continue to sell their knock-off products.
Alternatively, Plaintiffs are entitled to disgorge all profits garnered by
Defendants in their sale of their knock-off products. Again, this calculation
remains ongoing.**

15.    For Your claim for violation of the Florida Uniform Trade Secrets Act in Count III of the Complaint, describe in complete factual detail (a) each element of the damages You claim, (b) the approximate amount You claim for each such element, and (c) how You calculated each amount.

**Answer: Plaintiffs have suffered lost sales caused by Defendants' sale of its knock-off products. Plaintiffs' damages are in the form of lost profits for each of Defendants' sales multiplied by Plaintiffs profit margin for the products. This profit margin is reflected in its net profits calculation provided as part of Plaintiffs' document production subject to HIGHLY CONFIDENTIAL – AEO protection. This damage calculation remains ongoing insofar as Defendants continue to sell their knock-off products. Alternatively, Plaintiffs are entitled to disgorge all profits garnered by Defendants in their sale of their knock-off products. Again, this calculation remains ongoing.**

16.     For Your claim for tortious interference in Count IV of the Complaint,

describe in complete factual detail (a) each element of the damages You claim, (b)

the approximate amount You claim for each such element, and

(c) how You calculated each amount.

**Answer: At present, Plaintiffs have identified no damages other than
nominal and exemplary damages. Plaintiffs reserve the right to amend this
answer as discovery proceeds.**

**Ronald Lee, II**

STATE OF FLORIDA
COUNTY OF MANATEE

The foregoing instrument was acknowledged before me by means of ☐ physical

presence or ☒ online notarization, this 5th day of Feb., 2025,

by

_____. The foregoing affiant is ☐ personally known OR has

☒ produced   FL DL   as identification.
(SEAL)

Morgan Day
Notary Public

MORGAN S. DAY
Commission # HH 109208
Expires March 28, 2025
Bonded Thru Troy Fain Insurance 800-385-7019

Country:
United States
State/County of Florida | Hillsborough
Printed: Morgan S. Day