# EXHIBIT D

# UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

Ronald Lee, II, and Proven
Industries, Inc.,

   Plaintiffs,    Case No.: 8:24-cv-01667-SDM-UAM

v.

Pacific Lock Company a/k/a Paclock
and Gregory B. Waugh,

   Defendants.
_____/

## PLAINTIFF PROVEN INDUSTRIES, INC.'S NOTICE OF SERVING ANSWERS AND OBJECTIONS TO DEFENDANT PACIFIC LOCK COMPANY'S FIRST SET OF INTERROGATORIES

Plaintiff, PROVEN INDUSTRIES, INC. by and through its undersigned counsel, hereby gives notice of serving its Answers and Objections to Defendant Pacific Lock Company's First Set of Interrogatories.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of February, 2025, I caused service of a true and correct copy of the foregoing via email to counsel for the Defendants Richard E. Fee at rfee@feejeffries.com, kwade@feejeffries.com, and bszabo@feejeffries.com.

            */s/ Frank R. Jakes*
            FRANK R. JAKES
            *Attorney for Plaintiffs*

#10433852

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Ronald Lee, II, and Proven
Industries, Inc.,

      Plaintiffs,                Case No.: 8:24-cv-01667-SDM-UAM

v.

Pacific Lock Company a/k/a Paclock
and Gregory B. Waugh,

      Defendants.
_____/

**PLAINTIFF PROVEN INDUSTRIES, INC.'S ANSWERS AND OBJECTIONS TO DEFENDANT PACIFIC LOCK COMPANY'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33, Federal Rules of Civil Procedure, Plaintiff Proven Industries, Inc. answers and objects to Defendant, Pacific Lock Company a/k/a Paclock's First Set of Interrogatories as follows:

**INTERROGATORIES**

1. Describe in complete factual detail each and every trade secret of Proven's that You allege in the Complaint each Defendant misappropriated.

   **Answer:**

   **<span style="color:red">CONFIDENTIAL</span>**

   **Answer: (1)   The market share potential for the new trailer coupler lock design. The then-untapped market involved a need for high security**

protection for trailers when disengaged from a towing apparatus. Plaintiff Lee shared his knowledge and experience with this market need with Defendants along with his knowledge of the shortcomings of the existing offerings; (2) Product fabrication materials. The trailer coupler lock could be fabricated out of sheet metal and pipe – readily available materials that did not require molding or the use of cast aluminum. Lee's design also employed the use of a "puck" lock component; (3) Full face design. Lee's new trailer coupler lock design employed the use of a full face design on a 5" inch pipe whereas the prior designs utilized a half-moon design on a 4" pipe; (4) Lee's trailer coupler lock design also envisioned the optional bolting of the "puck" lock onto the front flat face of the coupler lock body, hence the need for the full face design change; (5) The ongoing information stream regarding the profitability of my trailer coupler lock design in this nascent market. Proven knew that Defendants would learn of its retail pricing for the trailer coupler lock product and with this knowledge could derive the approximate profit margin since Defendants would know the approximate cost for fabricating the sheet metal required for the product and would also know the price that Defendants were selling their "puck" locks. From this information stream, Defendants could extrapolate the approximate profit margin. Additionally, Defendants would divine Proven's sales volume since Defendants were selling Proven all of our "puck" locks needed for the product; (6) Trailer door lock design. From this

business relationship, Defendants learned of Lee's design for a trailer door lock. From this relationship, Defendants also learned of the size and dimensions of the "puck" lock utilized by Proven for this product; and (7) The wing design for trailer coupler lock.

2. For each trade secret identified in answer to Interrogatory No. 1, describe in complete factual detail the circumstances under which each Defendant "acquired, used, and disclosed" the trade secret as alleged in Paragraph 54 of the Complaint and, in Your answer, identify the dates of acquisition, use, and/or disclosure and state how the trade secret was "acquired, used, and disclosed" by each Defendant.

> **Answer: With the exception of #5, all of the confidential information was disclosed telephonically. The timing of the disclosures began immediately after the Mutual NDA was executed and ended with the demise of the business relationship between the parties in 2019. Regarding #5, this ongoing information stream was available to Defendants over time as Defendants learned of my design for the trailer coupler lock and could extrapolate margins and volume as described in my answer to Interrogatory #1. This confidential information was then used by Defendants to manufacture their identical, competitive products, eventually brought to market in late-2023.**

3. Describe in complete factual detail all reasonable efforts You took to maintain the secrecy of the trade secrets You identified in answer to Interrogatory No. 1.

**<u>Answer</u>: Before imparting any confidential information to Defendants, Proven required Defendants to execute the Mutual NDA. Proven relied on the belief that Defendants would honor their contractual commitments therein. Further, because of the Defendants' execution of the Mutual NDA, Proven did not seek early patent protection for Lee's trailer coupler lock design.**

4.      Describe in complete factual detail the actual or potential independent economic value You believe is derived from the trade secrets You identified in answer to Interrogatory No. 1, and the methodology or basis for Your valuation.

**Answer: By developing the design of my trailer coupler lock and being first to the market, Proven has been able to create and expand a market which did not really exist prior to the introduction of my products. Knowing the potential for the market size and profit margins for the product has allowed and continues to allow Proven to dedicate resources to product enhancements and new product development. Similarly, these trade secrets permit Proven to properly dedicate resources to marketing and advertising of the products. While competitors who lack access to these trade secrets (i.e. competitors other than Defendants) may generally know that Proven trailer coupler lock products are popular, they lack the nuanced understanding of the potential for market growth and profitability. To date, a valuation of the independent economic value has not been conducted.**

5.      Identify each and every individual or business entity that has entered into an agreement with Proven that contains a nondisclosure, confidentiality, and/or trade secrets provision and state when they executed the agreement. This interrogatory specifically includes agreements with clients, vendors, suppliers, employees, and independent contractors.

**Answer: Pursuant to Fed. R. Civ. P. 33(c), Plaintiffs are producing documents in response to Requests #1, to Defendants First Request for Production of Documents that constitute these agreements.**

6. Identify each and every individual or business entity to whom You disclosed each trade secret You identified in answer to Interrogatory No. 1.

**Answer: Other than Defendants, none.**

7. Describe in complete detail all facts You contend support Your allegation in Paragraph 71 of the Complaint that "Defendants have intentionally and without justification interfered with Plaintiffs' advantageous business relationship with their Patent Agent," and, in Your answer, state the date of the interference and identify all persons with knowledge of the facts.

**<u>Answer</u>: After Defendants threatened to copy Plaintiffs' products and damage Plaintiff in the marketplace, Proven was advised that by Peter Ganjian that he would terminate his representation of Plaintiffs due to a potential conflict. Plaintiffs reasonably inferred that this "potential conflict" was the result of Defendants interference in Plaintiffs' relationship with Ganjian.**

8. Describe in complete factual detail the "irreparable harm" You allege You have suffered from each Defendant's actions as alleged in Paragraphs 58 and 68 of the Complaint.

**Answer: By exploiting Proven's trade secrets and confidential information in contravention of the Mutual NDA between the parties and the general principles of trade secret protection, Defendants are causing Plaintiffs' irreparable harm by introducing virtually identical products into the marketplace that not only displace sales of Plaintiffs' products but damage Plaintiffs' reputation as the market leader in this distinct market niche.**

9. Describe with specificity all contacts or communications You had with Peter Ganjian regarding (a) each Defendant, (b) the UCS-77S Heavy-Duty Trailer Coupler Lock, and/or (c) Mr. Ganjian's termination of services as a patent agent for Proven. For each such contact or communication, (i) state the date of the contact or communication and (ii) state the substance of the contact or communication.

**Answer: The only communication with Peter Ganjian that referenced Defendants was in initial telephonic communications that explained that Plaintiffs were referred to by Defendants. There have been no communications with Peter Ganjian regarding Defendants' UCS-77S Heavy-Duty Trailer Coupler Lock. The only communication with Mr. Ganjian regarding his termination of his representation of Plaintiffs was a brief telephone conversation with Anthony Sansone which generally stated the content of Mr. Ganjian's e-mail advising of the termination.**

10. For Your claim for violation of the Federal Defense of Trade Secrets Act in Count II of the Complaint, describe in complete detail (a) each element of damages You claim, (b) the approximate amount You claim for each such element, and (c) how You calculated each amount and identify the documents upon which You base Your calculation.

> **Answer: Plaintiffs have suffered lost sales caused by Defendants' sale of its knock-off products. Plaintiffs' damages are in the form of lost profits for each of Defendants' sales multiplied by Plaintiffs profit margin for the products. This profit margin is reflected in its net profits calculation provided as part of Plaintiffs' document production subject to HIGHLY CONFIDENTIAL – AEO protection. This damage calculation remains ongoing insofar as Defendants continue to sell their knock-off products. Alternatively, Plaintiffs are entitled to disgorge all profits garnered by Defendants in their sale of their knock-off products. Again, this calculation remains ongoing.**

11.     For Your claim for violation of the Florida Uniform Trade Secrets Act in Count III of the Complaint, describe in complete factual detail (a) each element of the damages You claim, (b) the approximate amount You claim for each such element, and (c) how You calculated each amount and identify the documents upon which You base Your calculations.

>  **Answer: Plaintiffs have suffered lost sales caused by Defendants' sale of its knock-off products. Plaintiffs' damages are in the form of lost profits for each of Defendants' sales multiplied by Plaintiffs profit margin for the products. This profit margin is reflected in its net profits calculation provided as part of Plaintiffs' document production subject to HIGHLY CONFIDENTIAL – AEO protection. This damage calculation remains ongoing insofar as Defendants continue to sell their knock-off products. Alternatively, Plaintiffs are entitled to disgorge all profits garnered by Defendants in their sale of their knock-off products. Again, this calculation remains ongoing.**

12. For Your claim for tortious interference in Count IV of the Complaint, describe in complete factual detail (a) each element of the damages You claim, (b) the approximate amount You claim for each such element, and (c) how You calculated each amount and identify the documents upon which You base Your calculations.

**Answer: At present, Plaintiffs have identified no damages other than nominal and exemplary damages. Plaintiffs reserve the right to amend this answer as discovery proceeds.**

Proven Industries, Inc.

By: _____

Ronald Lee, II
President

STATE OF FLORIDA

COUNTY OF MANATEE

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☒ online notarization, this **5th** day of **Feb.**, 2025, by

_____. The foregoing affiant is ☐ personally known OR has ☒ produced **FL DL** as identification.
(SEAL)

_____
Notary Public



Country: **United States**

State/County of **Florida / Hillsborough**

Printed: **Morgan S. Day**