UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| Ronald Lee, II, and Proven, Industries, Inc., <br><br> Plaintiffs, <br> v. <br><br> Pacific Lock Company, a/k/a Paclock, and Gregory B. Waugh, <br><br> Defendants. _____/ | Case No.: 8:24-cv-01667-SDM-UAM |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO AMAZON SALES OF ACCUSED PRODUCTS**

Pursuant to Local Rule 3.01, Defendants, Pacific Lock Company, a/k/a PacLock ("PACLOCK") and Gregory B. Waugh ("Mr. Waugh") respond as follows in opposition to Plaintiffs' Amended Motion to Compel Production of Documents Related to Amazon Sales of Accused Products (Dkt. No. 49)(the "Amended Motion").

*The Motion Is Moot*

The Amended Motion is now moot. Before filing this Response, PACLOCK produced to Plaintiffs' counsel <u>all</u> invoices for <u>all</u> UCS-77 series products dated through August 7, 2025[1] – including products which are not the subject of this lawsuit.

---

[1] August 7, 2025 is the last date that Plaintiffs had requested sales information through from Defendants. PACLOCK's corporate representative was deposed on that date and the topics of examination included sales of the UCS-77S-2516 and 2718 locks.

PACLOCK admittedly did not previously produce all invoices for sales through the Amazon platform but did so inadvertently and not intentionally. PACLOCK's good faith efforts to comply with discovery, however, is evidenced by the fact Plaintiffs requested documents regarding "sales of Paclock's UCS-77**S** Heavy-Duty Trailer Coupler Lock [the accused competitive product]"[2] and PACLOCK included the sales for its UCS-77**A** lock, which is not the accused competitive product, in its previous productions. *See* Exhibit "A", Declaration of Gregory Waugh, at paras. 6-7.

Although PACLOCK previously produced some invoices reflecting sales through Amazon, not all were produced because of an inadvertent oversight in the search parameters. PACLOCK's President and CEO, Gregory Waugh personally searched for the invoices for the UCS-77 series sales. *Id.* at para. 4. Mr. Waugh logged into PACLOCK's order management system called "AllOrders by Numbercruncher" and went to the search capability for invoices. *Id.* at para. 5. Mr. Waugh specified the wildcard of "UCS-77" in the "Item" area of the invoice thinking that using that keyword would return all of PACLOCK's sales for the entire UCS-77 series product and not just the UCS-77S product that Plaintiffs requested. *Id.* at para. 6. After Plaintiffs filed their original Motion to Compel, Mr. Waugh and his team at PACLOCK double and triple-checked their sales numbers to determine whether they had failed to capture all Amazon sales in their searches. *Id.* at para. 7. While confirming the sales, Mr. Waugh realized that his search for "UCS-77" in the "Item"

---

[2] *See* Motion at p. 3 (emphasis added); and pages 4, 10, footnote 4 on page 10, 11, 12, 13, and 14.

field for the invoices did not capture all Amazon invoices because PACLOCK's Amazon listings use a different naming convention than "UCS-77". *Id.* at para. 8. Rather, PACLOCK's Amazon listings use a "Model Name" such as "PLC11581105200000101010000." *Id.* at para. 9. The Amazon Model Name is entered into the "Item" field for PACLOCK's invoices for Amazon sales instead of "UCS-77S" or "UCS-77A". *Id.* at para. 10. Mr. Waugh forgot that the Amazon Model Name was entered into the "Item" field and not "UCS-77" for Amazon sales. *Id.* at para. 11. PACLOCK did produce some invoices reflecting sales of a UCS-77 lock through Amazon but those invoices were exchanges for products where the customer bought one type of lock and realized they needed another. *Id.* at para. 12. In that situation, the PACLOCK team goes into the Amazon invoice and updates the "Item" information to reflect PACLOCK's non-Amazon model number. *Id.* at para. 13. PACLOCK did not intentionally fail to produce all invoices for sales through Amazon during the discovery period. *Id.* at para. 14. PACLOCK has now produced all invoices reflecting sales of all UCS-77 series products, including all sales through Amazon, through August 7, 2025. *Id.* at para. 15.

### *Plaintiffs Have Not Established Good Cause To Reopen Discovery*

Per Rule 16(b)(4), Federal Rules of Civil Procedure, Plaintiffs must establish "good cause" to modify the Court's scheduling order and reopen discovery in order to serve a subpoena on Amazon as Plaintiffs request. The good cause standard "**precludes** modification unless the schedule cannot be met despite the diligence of the

party seeking the extension." *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1418 (11th Cir. 2017)(emphasis added)(district court properly denied motion to amend scheduling order where plaintiff "failed to demonstrate good cause" and "lacked diligence" in pursuing discovery).

Plaintiffs never argued the "good cause" standard in the Amended Motion, did not meet the standard, and were not diligent in pursuing the discovery. The original Motion was filed two (2) hours before the discovery cutoff, 9:56 p.m., Friday, September 5, 2025, with *no* attempt at a good faith pre-filing conference mandated by Local Rule 3.01(g)(1). Plaintiffs did not give Defendants any opportunity before filing the Motion to resolve the issue.

Before filing its original Motion to Compel, Plaintiffs *never* asked PACLOCK for the invoices underlying the Excel spreadsheet which PACLOCK had produced in discovery. PACLOCK produced an Excel spreadsheet identifying its sales on October 17, 2024. PACLOCK produced the Amazon invoices, and other invoices, on June 3, 2025 in response to Plaintiffs' Third Request for Production. Although Plaintiffs deposed PACLOCK's President and CEO, Gregory Waugh, on October 17, 2024 and on August 7, 2025, and asked questions about Amazon, Plaintiffs never sought during discovery to otherwise check or confirm the Amazon sales information that PACLOCK had produced. The lawsuit was filed on July 15, 2024 (Dkt. No. 1) and discovery closed on August 29, 2025. Plaintiffs had more than a year to conduct discovery on the Amazon sales and simply were not diligent.

Because Plaintiffs had not met the legal standard for reopening the discovery deadline, the Court should deny Plaintiffs' request to subpoena Amazon.

### *The Jungle Scout Screenshots Are Not Authentic, Reliable Or Accurate*

Plaintiffs have also failed to provide a sufficient factual basis to reopen discovery. Plaintiffs base their entire request to reopen discovery and serve a subpoena on Amazon on unverified, barely discernable screenshots of what they contend shows "a glaring discrepancy of more than 1000 units of sales." Amended Motion at p. 9. Plaintiffs contend the screenshots are from a software program called "Jungle Scout" but *there is nothing* in the screenshots themselves which identify the software.

Moreover, the screenshots are not admissible evidence. *See* Rule 901(a), Federal Rules of Evidence. *There is nothing* in the Amended Motion verifying the accuracy of the alleged Jungle Scout screenshots or the purported results. Plaintiffs have provided *no information* as to how the search was conducted. There is *no explanation* in the Amended Motion as to what the screen shots cut and pasted into the body of the Motion even show. There is *no affidavit or declaration* to support Plaintiffs' contention that "Plaintiff Proven has tested Jungle Scout's software and data against its own Amazon sales and has confirmed that Jungle Scout's results, while not always precisely accurate, are fundamentally correct."[3] Moreover, Plaintiffs failed to explain what they mean by the "results, while not always precisely accurate, are fundamentally correct."

---

[3] Amended Motion at p. 9.

5

In short, Plaintiffs have failed to provide this Court with any evidence establishing that the Jungle Scout results are authentic, reliable, and otherwise evidence a "glaring discrepancy" in PACLOCK's Amazon sales.

Instead, Plaintiffs have admitted the data may not be accurate. Page 9 of Plaintiffs' Motion admits that "Jungle Scout's results [are] … not always precisely accurate." In addition, Anthony Sansone, the Mechanical Engineer of Proven Industries, admitted during his deposition that the software applications providing Amazon data research provided only "rough estimates":

> Q. Do you know if it's possible to see how many products a company that sells on Amazon has sold through Amazon?
> A. I believe there's applications that you can get rough estimates from.
> Q. Right. You can know whether they've sold 1,000, 10,000, or 1,000,000 for example?
> A. Yeah. Whether it's – how accurate it is, but, you know.

*See* attached Exhibit B, transcript of deposition of Anthony Sansone.

Further, PACLOCK has identified a "glaring discrepancy" between the "BSR" numbers in the alleged Jungle Scout screenshots and the "BSR" numbers on Amazon's website. "BSR" refers to Best Seller Rank. Each one of the alleged Jungle Scout screenshots set forth in the Amended Motion reflects two BSR numbers for the product that is significantly different from the BSR ranks listed on Amazon's webpages for the product. *See* Exhibit "C", Declaration of Victoria Aleshire and Composite Exhibits 1-5, thereto.

Moreover, customers who purchased the Jungle software have publicly complained that the software is not accurate. *See* Exhibit "D", Declaration of Victoria Aleshire and Composite Exhibit "1", composed of online customer complaints.

Finally, PACLOCK confirms that the alleged Jungle Scout results are not accurate. According to the Amended Motion, "Jungle Scout, …, therefore reflects Defendant Paclock's Amazon sales at 1043 units" for just the UCS-77S product. Amended Motion at p. 8. PACLOCK has sold only **461** units of **all** UCS-77 products through **all** distribution channels including Amazon. *See* Exhibit "A", at para. 16. Plaintiffs' Jungle Scout results are wildly inaccurate.

Given the lack of evidence of Jungle Scout's authenticity, reliability and accuracy, and the evidence showing that it is not accurate, the Court cannot and should not determine that PACLOCK sold more units through Amazon than what is memorialized in PACLOCK's evidence. There is simply no factual basis to reopen discovery and allow Plaintiffs to issue a subpoena to Amazon.

*PACLOCK Would Be Prejudiced By The Belated Production Sought From Amazon*

PACLOCK and Plaintiffs are competitors. This lawsuit is utterly without merit and nothing more than an attempt to restrain competition, as PACLOCK argues in its recently-filed Motion For Summary Judgment. PACLOCK has designated its sales information as "Confidential" or "Highly Confidential" in order to protect its customer and manufacturing information from Plaintiffs. PACLOCK has no idea what documents Plaintiffs intend to subpoena from Amazon as Plaintiffs have not identified for the Court what documents it seeks. PACLOCK is concerned that

Plaintiffs will seek information from Amazon that PACLOCK has designated as "Confidential" or "Highly Confidential," and Amazon will produce confidential documents directly to Plaintiffs' counsel without any confidentiality protections for PACLOCK, including documents unrelated to the UCS-77S product. PACLOCK would be highly prejudiced if the Court gives carte blanche to Plaintiffs on a subpoena to Amazon.

*Plaintiffs' Sanctions Request Lacks Merit*

Sanctions are not warranted against PACLOCK and Mr. Waugh. Even though the Amended Motion requests sanctions under Rule 37, Federal Rules of Civil Procedure, the Motion fails to argue the standard for Rule 37 sanctions and fails to argue why sanctions are merited.

Rule 37(a)(5) clearly provides that the Court "**must not** order" sanctions if:

(i)   The movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
(ii)  The opposing party's nondisclosure, response, or objection was substantially justified; or
(iii) Other circumstances make an award of expenses unjust.

(Emphasis added).

Here, Plaintiffs filed their motion before making any attempt to confer in good faith with PACLOCK's counsel. Plaintiffs' counsel knew from PACLOCK's document productions on October 17, 2024 and on June 3, 2025 that PACLOCK's sales were low. Plaintiffs' counsel knew in June, 2025 that few invoices had been produced showing Amazon sales. Plaintiffs had plenty of time and opportunity before the close of discovery to double check the Amazon sales and engage in a meet and

8

confer with PACLOCK but instead chose to simply wait until almost 10 p.m. on the Friday that discovery closed and filed their motion without a good faith conference.

Additionally, PACLOCK's nondisclosure of the rest of the Amazon invoices for the UCS-77S product before the Motion to Compel was filed was "substantially justified." The Declaration of Gregory Waugh evidences that PACLOCK's nondisclosure of all Amazon sales for the UCS-77S product was inadvertent, simply a mistake, and not intentional. PACLOCK and Mr. Waugh had otherwise complied with their discovery obligations.

Finally, if the Court determines that PACLOCK's inadvertent mistake does not "substantially justify" the underproduction, the mistake certainly constitutes "[o]ther circumstances [that] make an award of expenses unjust." PACLOCK had produced invoices for Amazon sales where the "Item" had been changed to a UCS-77 product – evidencing that PACLOCK has not tried to hide its Amazon sales. When PACLOCK realized its mistake, it admitted its mistake and produced all invoices for all UCS-77 products sold through all channels and did not limit its production to only invoices for the UCS-77S product sold through Amazon.

PACLOCK was not, as Plaintiffs contend, "disingenuous" but simply made a mistake. Plaintiffs' hypocrisy on this point also justifies denial of their sanctions request. Plaintiffs did not produce any evidence regarding the number of units sold, total sales, or their profit margin for their products they contend lost sales. Plaintiffs instead contended they would disclose this information with their expert report. Even though Plaintiffs asked this Court for a two month extension to prepare their expert

9

report, Plaintiffs never disclosed an expert and never served an expert report. To date, Plaintiffs still have not provided any information on their sales dollars or profit margin even though they assert in their Interrogatory answers they will seek lost profits for damages.

Under Rule 37(a)(5)(A)(i)-(iii), the Court should deny Plaintiffs' request for sanctions.

## CONCLUSION

The Amended Motion is moot and should be denied. PACLOCK has produced all requested invoices. Plaintiffs' remaining requests to reopen discovery and sanction Defendants fail to meet the requisites of the Federal Rules of Civil Procedure and should also be denied. For these reasons, as well as those set forth more fully above, PACLOCK and Mr. Waugh respectfully request the Court deny the Amended Motion to Compel.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 19, 2025, I filed a true and accurate copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Frank R. Jakes (frankj@jpfirm.com, mday@jpfirm.com, pattit@jpfirm.com), JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP, 400 North Ashley Drive, Suite 3100, Tampa, Florida 33602.

/s/ Richard E. Fee
Richard E. Fee
Florida Bar No. 813680
Kathleen M. Wade
Florida Bar No. 127965
FEE & JEFFRIES, P.A.
1227 N. Franklin Street
Tampa, Florida 33602
(813) 229-8008
(813) 229-0046 (Facsimile)
rfee@feejeffries.com
kwade@feejeffries.com
bszabo@feejeffries.com
valeshire@feejeffries.com

*Lead Trial Counsel for Defendants,
Pacific Lock Company a/k/k PacLock, and
Gregory B. Waugh*